WASHBURN vs. THE CITY OF OSHKOSH.

*April 11 — May 15, 1884.*

| 60 | 453 |
| 79 | 155 |
| 60 | 453 |
| 104 | 207 |
| 60 | 453 |
| 113 | ²415 |

TAXATION: CITIES: CONSTITUTIONAL LAW. *(1) Lumber, where assessed. (2) Power of legislature to annex land to city. (3, 4) Limitation of rate of taxation on certain land: Repeal.*

1. Manufactured lumber kept for sale is within the description, "merchants' goods, wares, commodities kept for sale," etc., in sec. 1040, R. S., and must be assessed for taxation in the district where located.

2. The legislature may, in its discretion, incorporate within the limits of a city, lands used exclusively for agricultural purposes, and thereby subject them to taxation for municipal purposes.

3. Where a city charter by which certain lands are for the first time included within the city limits, provides that they shall be taxed only at a certain rate, such proviso is not in the nature of a contract, and may be repealed at any time.

4. Nor is such proviso a "contract," "claim," or "demand," entered into or existing under or by virtue of the charter, within the meaning of a saving clause in the repeal of such charter.

APPEALS from the County Court of *Winnebago* County.

The plaintiff appealed from an order sustaining a general demurrer to the second cause of action stated in the complaint; and the defendant appealed from an order overruling a similar demurrer to the first cause of action stated. The facts alleged in the complaint will sufficiently appear from the opinion.

For the plaintiff there was a brief signed by *G. W. Washburn*, attorney *in pro. per.*, and the cause was argued orally by *Chas. W. Felker*. They contended, *inter alia*, that the proviso limiting the rate of taxation upon the land annexed to the city constituted a contract between the city and the owners of the land. *Bowdoinham v. Richmond*, 6 Me., 112; *North Yarmouth v. Cumberland*, id., 21; *State v. Hoboken*, 43 N. J. Law, 96; *Smith v. Appleton*, 19 Wis., 468; *Hampshire v. Franklin*, 16 Mass., 88. The provisions for annexation and taxation must stand together. *Slauson v. Racine*, 13 Wis., 398; *State ex rel. Walsh v. Dousman*, 28 id., 541; *Slinger v. Henneman*, 38 id., 504. The legislature had no power to subject lands used exclusively for agricultural purposes to taxation for municipal purposes by annexing them to a city. *Smith v. Sherry*, 50 Wis., 210; *Calder v. Bull*, 3 Dall., 386; *People v. Edmonds*, 15 Barb., 529; *Fletcher v. Peck*, 6 Cranch, 87; *Wells v. Weston*, 22 Mo., 385; *Cheaney v. Hooser*, 9 B. Mon., 330; *Borough of Little Meadows*, 35 Pa. St., 335; *Morford v. Unger*, 8 Iowa, 82; *Butler v. Muscatine*, 11 id., 433; *Langworthy v. Dubuque*, 13 id., 86; *S. C.*, 16 id., 271; *Fulton v. Davenport*, 17 id., 404; *Buell v. Ball*, 20 id., 282; *Burlington & M. R. R. R. Co. v. Spearman*, 12 id., 113; *Deeds v. Sanborn*, 22 id., 214; *S. C.*, 26 id., 419; *Deiman v. Ft. Madison*, 30 id., 542; *Covington v. Southgate*, 15 B. Mon., 491; *Sharp's Ex'r v. Dunavan*, 17 id., 223; *Maltus v. Shields*, 2 Met. (Ky.), 553; *Bradshaw v. Omaha*, 1 Neb., 16; 1 Dillon on Mun. Corp., sec. 634; Sedgwick on Stat. & Const. Law, 647.

For the defendant there was a brief signed by *John W.*

*Hume,* City Attorney, and the cause was argued orally by *Gabe Bouck.*

COLE, C. J. There can be no doubt but the first count in the complaint states a cause of action; consequently the demurrer to it was properly overruled. It is alleged therein that the plaintiff and one John R. Washburn — who were, and had for a long time been, residents of *Oshkosh* — on the 1st of May, 1882, were the owners of a quantity of pine lumber, then being at Eland junction, in the county of Shawano; that this lumber had been manufactured at Eland junction out of logs cut and drawn by plaintiff and John R. Washburn to that place, and was then and there held and kept by them as such owners for the purpose of sale, and was in fact there sold sometime in the summer of 1882. This lumber was assessed for taxation in the city of *Oshkosh,* and the tax levied upon it was paid by plaintiff under protest. One object of the suit is to recover this tax thus illegally exacted.

Under the decision in *Mitchell v. Town of Plover,* 53 Wis., 548, it is very clear this lumber could only be rightfully assessed for taxation in the town where it was located and kept for sale. That point was so expressly ruled in the *Mitchell Case.* It is, however, claimed by the learned city attorney that this lumber could not be regarded as " merhants' goods, wares, commodities kept for sale, . . . manufacturers' stock," etc., within the meaning of that language as used in the third sentence of sec. 1040, R. S., which, it is said, has exclusive reference to goods and wares kept by persons engaged in strict mercantile business. But that view of the statute was rejected in the above case, where Mr. Justice TAYLOR says these words " were clearly intended to cover all kinds of property kept for sale by merchants, and the word 'merchants' must receive its most extended meaning, and include all persons who keep for sale and sell any

kind of chattel property at a fixed place." Page 550. This case cannot be distinguished from the *Mitchell Case*, which is decisive as to the first cause of action.

We think the demurrer was correctly sustained to the second cause of action. That cause of action is founded upon these grounds: In 1856 the charter was amended, and the boundaries of the city extended so as to include within the city limits adjacent lands which were used exclusively for agricultural purposes. It is alleged that the owners of these lands were opposed to their being included within the city limits and made subject to the taxation incident to a municipal government, and that it was understood by the common council that the legislature of 1856 would not enlarge the boundaries so as to include these lands against the wishes of the owners. To remove the objection of the owners to the proposed extension, and as a condition to their withdrawing their opposition thereto, the common council proposed to the owners that if these lands were incorporated within the city limits they should not, while they were used exclusively for agricultural purposes, be taxed for all corporate purposes, but only at the same rate they were then taxed for town purposes, which rate it was agreed should be one half of one per cent. on their valuation. Afterwards, without the knowledge of the land-owners, by procurement of the city authorities, this limitation upon the power to tax these lands was removed. The plaintiff was the owner of a forty-acre tract which is used for agricultural purposes, and which has been taxed for many years for city purposes at a rate exceeding one half of one per cent. These taxes he has paid under protest, and now seeks to recover them back.

Now, it is claimed by the learned counsel for the plaintiff that the legislature had not the power to incorporate within the city limits lands used exclusively for agricultural purposes, and subject them to municipal taxation. But we imagine it would be exceedingly difficult to point out a con-

stitutional restriction on the power of the legislature in respect to such matters. It may be unwise, even unjust, to include within the limits of a city or village, lands used for agricultural purposes, and impose upon them the additional burdens of such municipalities. But where is the remedy? Certainly not in the courts. Confessedly the legislature has power, under the constitution, to provide for the organization of cities and incorporated villages, which carries with it the power to fix the territorial boundaries of such public corporations. If the legislature sees fit to include agricultural lands within the boundaries, what right have the courts to control or review that legislative discretion? Can the courts say to the legislature it must not annex this territory or that to the municipality; that it has not ample power to prescribe the extent of the city or village limits? It seems to us a very plain proposition that such matters rest entirely within the discretion and under the control of the legislature.

It may be that decisions can be found which deny such legislative power and discretion. If so, we should be unwilling to follow them. The power has probably been exercised by the legislature to fix the territorial boundaries of municipal corporations since the organization of the state government. It being conceded, as it must be, that the legislature had power to incorporate the city of *Oshkosh* and prescribe its boundaries, it follows that agricultural lands might be included in the city limits at the discretion of the legislature. The city charter could be amended so as to extend the corporate jurisdiction over new territory and other persons, without consulting either the new or the old inhabitants of the city. Of course, the local taxing power would be correspondingly extended to all property within the city limits which was not exempt.

But the same counsel insist that, as the city procured the annexation of these lands with the limitation in the charter as

to taxation over them, that limitation could not be repealed without the consent of the land-owners. But we suppose the limitation provision stood upon the same ground as other provisions of the charter, and was no more sacred. It was not in the nature of a contract, but the legislature had full control over it. The local taxing power might be restricted or enlarged by amendments to the charter. "In respect to public or municipal corporations, which exist only for public purposes, as counties, cities, and towns, the legislature, under proper limitations, has a right to change, modify, enlarge, restrain, or destroy them, securing, however, the property for the uses of those for whom it was purchased. A public corporation, instituted for purposes connected with the administration of the government, may be controlled by the legislature, because such a corporation is not a contract within the purview of the constitution of the United States." 2 Kent's Comm., 306; Ang. & A. on Corp., § 31; *Town of Marietta v. Fearing*, 4 Ohio, 427.

Again, it is claimed that the limitation in the charter of 1856 was not repealed by any subsequent legislation, but is still in force. It might possibly admit of some doubt whether sec. 10, ch. 163, P. & L. Laws of 1860, repealed the limitation, because of the uncertainty as to what "section five" in the charter is there referred to. Be this as it may, by the various revisions of the charter the limitation has been repealed, if not expressly, certainly by implication,— unless it comes within the saving clause. See ch. 46, P. & L. Laws of 1861; ch. 501, P. & L. Laws of 1868; ch. 123, Laws of 1877. In these various revisions there is a saving clause to the effect that the repeal shall not in any manner affect, injure, or invalidate any "contract," "claim," or "demand" that may have been entered into or which may exist under or by virtue of or in pursuance of the acts repealed, or any of them. We do not think any of the words used in the saving clause can, by any fair construction, be

held to include the limitation as to the rate of taxation upon agricultural lands which is found in the charter of 1856. Any such construction would be forced and unnatural, and we are clear the saving clause was not intended to refer to it.

*By the Court.*— The order of the circuit court is affirmed.