[No. 1046. Decided May 17, 1894.]

CLARK FERGUSON, *Appellant*, v. THE CITY OF SNO-
HOMISH, *Respondent*.

ACTION AGAINST MUNICIPAL CORPORATION — DENIAL OF CORPORATE
EXISTENCE — EXTENSION OF CITY LIMITS — TAXATION — AGRICUL-
TURAL LANDS WITHIN CITY LIMITS.

The validity of the incorporation of a city cannot be questioned
in an action brought against it as a municipal corporation; nor can
its corporate existence be attacked in a collateral action.

The constitution and statutes thereunder, providing for the in-
corporation of cities and towns, do not confine the corporation to
the exact limits of any preëxisting city or town, but the question of
boundary may be determined by the vote of the people within the
limits of the proposed incorporation upon the submission of a
proposition therefor by the county commissioners based upon the
petition of residents within the proposed boundaries.

The municipal taxation of agricultural lands included within
the corporate limits of a city is not unconstitutional on the ground
that it is a taking of private property without just compensation.

*Appeal from Superior Court, Snohomish County.*

*W. R. Andrews*, for appellant.

*L. H. Coon*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—It is provided, among other things, in
§ 10, art. 11 of the state constitution, that—

"Corporations for municipal purposes shall not be cre-
ated by special laws; but the legislature, by general laws,
shall provide for the incorporation, organization and classi-
fication, in proportion to population, of cities and towns,
which laws may be altered, amended or repealed.   Cities
and towns heretofore organized or incorporated may be-
come organized under such general laws whenever a ma-
jority of the electors voting at a general election shall so
determine, and shall organize in conformity therewith."

By virtue of the authority conferred by this section, the legislature of the state passed an act, approved March 27, 1890 (Laws 1889–90, p. 131), entitled "an act providing for the organization, classification, incorporation and government of municipal corporations, and declaring an emergency." Section 1 of this act declares that —

"Any portion of a county containing not less than three hundred inhabitants, and not incorporated as a municipal corporation, may become incorporated under the provisions of this act, and when so incorporated shall have the powers conferred, or that may hereafter be conferred, by law upon municipal corporations of the class to which the same may belong."

Some time in the year 1888, the inhabitants of the village of Snohomish attempted to incorporate under the act of February 2, 1888 (Laws 1887–8, p. 221), but as that act was declared void by this court in *Territory, ex rel. Kelly, v. Stewart*, 1 Wash. 98 (23 Pac. 405), such village never had a legal corporate existence. On May 19, 1890, a petition, signed by the requisite number of persons residing within the boundaries therein prescribed, was presented to the county commissioners of Snohomish county, praying for the incorporation of a city of the third class, under the provisions of said act of March 27, 1890. The boundaries of the proposed city, as described in the petition, included the former village of Snohomish, and in addition thereto some two hundred and forty acres of land belonging to appellant, which was contiguous to said village, but only forty acres of which was included therein under the attempted incorporation by virtue of said act of February 2, 1888. At the time of the presentation of the petition these lands were occupied by appellant and his family only; were not laid out into town lots or blocks, but were used by him as a dairy farm exclusively. But a portion of appellant's lands abutted on the block of land

upon which was situate the county court house, and on the west and north of said premises were several additions to the town, containing, altogether, about sixty inhabitants.

Upon the hearing of the petition, the appellant appeared before the commissioners and objected to their including his lands within the boundaries of the proposed corporation, but offered to be satisfied if they would include the forty acres formerly included in the original village, and allow the balance to remain outside. The commissioners, however, did not see fit to change the boundaries as prayed for, and an election was ordered and held, the votes canvassed, and the incorporation was thereupon declared complete. No legal proceeding, however, was instituted by appellant to correct any supposed error on the part of the board of commissioners, or to prevent them from submitting the question of incorporation to the vote of the people in accordance with the provisions of the statute. But, after the formation of the corporation, and after his land had been sold for city taxes which he neglected to pay, he brought this action to have the proceedings of the county commissioners by which his lands were included within the city of Snohomish declared null and void, to remove the cloud cast upon his title to said land by said tax sale, and to enjoin the said city, its officers and agents, from further assessing or attempting to assess, or selling or attempting to sell, his said lands and premises or any part thereof.

The first contention of the learned counsel for the appellant, is that the board of county commissioners of a given county have no right, under the constitution and laws of this state, to include within the boundaries of a municipal corporation lands which are used purely for agricultural purposes. But we are of the opinion that the appellant is not in a situation to question the validity of the incorporation of the city of Snohomish, for the reason that he has

brought his action against it as a municipal corporation, and alleged it to be such in his complaint; and even if he had not done so he could not, according to the weight of authority, attack the corporate existence of the city in a collateral action like this. 1 Dill., Mun. Corp. (4th ed.), § 43*a*, and cases cited; Cooley's Const. Lim. (5th ed.), p. 311.

But, irrespective of the foregoing considerations, we think the appellant's contention cannot be sustained. No irregularities in the proceedings whereby the respondent city claims to have become incorporated have been pointed out, and only the right to establish the boundaries thereof so as to include the lands of appellant is questioned. It is not denied that in the absence of constitutional inhibition the legislature might, by special act, have incorporated the city with its present boundaries, but it is insisted on behalf of the appellant that, inasmuch as the constitution of this state only authorizes the legislature to provide for the incorporation of cities and towns, nothing but cities and towns proper can legally be incorporated; or, in other words, no territory not actually covered by the city or town desiring to become incorporated can be embraced within its limits. Several cases are cited in support of counsel's position, all of which, no doubt, were decided in accordance with the local statutes upon the subject and the facts before the court. Prominent among these cases is that of *Ewing v. State*, 81 Tex. 172 (16 S. W. 872), in which the supreme court of Texas held that the attempted incorporation of the city of Oak Cliff, containing about two thousand inhabitants, and actually covering an area of about two square miles, so as to include within its new boundaries about ten square miles of rural territory, not part of that city, nor of any other city, and comprising farms, pastures and unoccupied surveys of land, could not be sustained, under a statute providing that, "when a city

or town may contain one thousand inhabitants or over, it may incorporate as a city or town in the manner prescribed by chapter 11 of this title." But the same court, under the same statute, held in *State v. Town of Baird,* 79 Tex. 63 (15 S. W. 98), that the incorporation of a town may properly include the territory occupied by the persons attending church, sending to the schools, and residing near to others making up the proposed town; and that this may be done regardless of whether the lands be laid out into lots or blocks. In the course of the opinion the court observed that, "It may not always be practicable to incorporate a town without including within its limits some territory devoted purely to pastoral or agricultural pursuits. Something may be allowed for prospective expansion."

Our statute concerning the incorporation of towns and cities is broader than that of Texas upon which those decisions were based. In providing a method for the incorporation of cities and towns, the legislature, recognizing the impossibility of fixing by a general law the exact boundaries of every municipality that might be organized thereunder, left that important question to be determined by the county commissioners and the people within the limits of the proposed incorporation; and when they provided that any portion of a county containing not less than three hundred inhabitants may become incorporated, they did not intend to confine the corporation to the exact limits of any preëxisting town or city, but did intend to allow something for "prospective expansion."

We are not prepared to say that the statute under which the city of Snohomish became incorporated is in contravention of the constitution; nor are we prepared to hold that the appellant's lands were legally included within the city limits. This court held in Campbell's case, 1 Wash. 287 (24 Pac. 624), that the inhabitants of towns which had attempted to incorporate under the void act of February 2, 1888, may incorporate under the act of March 27, 1890,

with a larger territory than that included in the original
boundaries.    While it is true that a town or city cannot
exist upon entirely vacant and unoccupied lands, we think
it is equally true, as was said in *Kelly v. Pittsburgh*, 104
U. S. 78, that the question of "how thickly or how sparsely
a territory within a city must be settled is one of the mat-
ters within legislative discretion."

But it is further contended by the appellant that even if
his lands were properly included within the corporate lim-
its of the city, they are not subject to taxation for general
municipal purposes, because such taxation would be a tak-
ing of private property without just compensation.    This
view of the law, although favored by the courts of Iowa
and Kentucky (*Morford v. Unger*, 8 Iowa, 82; *Covington
v. Southgate*, 15 B. Mon. 498), is contrary to the great
weight of authority in this country.    In regard to munici-
pal taxation, our constitution provides that "such taxes
shall be uniform in respect to persons and property within
the jurisdiction of the body levying the same," and the
doctrine contended for by appellant is in direct contraven-
tion of that provision, and must, therefore, be rejected.
Cooley, Const. Lim. (5th ed.), p. 626; Cooley, Taxation
(2d ed.), pp. 158–9; 2 Dill., Mun. Corp. (4th ed.),
§§ 794–5; *Powers v. Commissioners*, 8 Ohio St. 285;
*Blanchard v. Bissell*, 11 Ohio St. 96; *Washburn v. Osh-
kosh*, 60 Wis. 453 (19 N. W. 364); *Cary v. City of Pekin*,
88 Ill. 154; *Kountze v. City of Omaha*, 5 Dill. (C. C.) 443;
*Davis v. Pt. Pleasant*, 32 W. Va. 289 (9 S. E. 228); *City
of Santa Rosa v. Coulter*, 58 Cal. 537; *Kelly v. Pittsburgh*,
85 Pa. St. 170; *Kelly v. Pittsburgh*, 104 U. S. 78; *State
v. Town of Baird, supra; Hurla v. Kansas City*, 46 Kan.
738 (27 Pac. 143).

The judgment of the court below is affirmed.

DUNBAR, C. J., and HOYT, SCOTT and STILES, JJ., con-
cur.