COPELAND, *Appellant*, v. THE CITY OF ST. JOSEPH.

Division Two, January 21, 1895.

1. **Constitution**: MUNICIPALITY: EXTENSION OF LIMITS: SPECIAL LAW. An act of the legislature empowering a city to change its limits and authorizing it to exercise the taxing power over territory not included in its original limits is a "change of its charter" and is, therefore, not a local or special law. (Const., art. 4, sec. 53, clause 11.)

2. ——: ——: ——: EXEMPTION FROM TAXATION: STATUTE. Section 5 of the act of the general assembly of March 30, 1887 (Laws, p. 53), empowering cities of the second class to extend their limits and providing that no tract over three acres thereby included in a city shall be subject to taxation so long as it remains undivided and is used for agricultural or horticultural purposes or for dwelling house purposes, in connection with a single dwelling house, is in conflict with the constitution, article 10, sections 1–7, requiring taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the same and declaring that all laws exempting from taxation property other than that enumerated in the constitution shall be void.

3. ——: ——: ——: ——: ——. The power to extend the city limits over farm land is so dependent on the condition of exempting them from taxation that the unconstitutionality of the exempting clause renders the whole of section 5 void.

4. ———: STATUTE: REPEAL. Although an act, by its terms, repeals all parts of former acts inconsistent with, or repugnant to, its provisions, yet it will not repeal a section of the former act corresponding in substance with a section of the new act, where the latter section is unconstitutional.

5. Municipality: EXTENSION OF CITY LIMITS: JUDICIAL REVIEW. The legislature may confer upon municipal corporations the power to extend their corporate limits; the reasonableness or unreasonableness of their acts in that respect being the subject of judicial review.

6. ———: ———. The facts in this case reviewed, and *held*, that the action of the municipal authorities in making the extension in controversy in this case would not be disturbed.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Thomas & Crow* for appellant.

(1) The ordinance by which the respondent attempted to extend its limits is unreasonable, arbitrary and oppressive, in that it is an attempt arbitrarily so to extend the city limits as to include large and valuable tracts of farming lands used and suitable for agricultural purposes only, and which are not needed or used for any city purpose whatever, thereby imposing upon the owners of such tracts heavy and oppressive burdens without any benefit or compensation whatever therefor. *Vestal v. Little Rock*, 15 S. W. Rep. 891; *Covington v. Arthur*, 14 S. W. Rep. 121; *Hartington v. Luge*, 50 N. W. Rep. 957; *St. Louis v. Weber*, 44 Mo. 547; Cooley on Const. Limitations [3 Ed.], 200 and 202, bottom pages 222, 225. (2) When an ordinance is unreasonable, the court will declare it void. *Kelly v. Meeks*, 87 Mo. 396; *Corrigan v. Gage*, 68 Mo. 541; *Cape Girardeau v. Riley*, 72 Mo. 220. (3) The proviso contained in section 5 of the act of the general

assembly, approved March 30, 1887 (Acts of 1887, p. 53, sec. 5), is in conflict with the constitution of Missouri, in that said proviso exempts a class of property from taxation for city purposes, in violation of the provisions of said constitution. Const., art. 10, secs. 1, 2, 3, 4, 6 and 7; *Slawson v. Racine*, 13 Wis. 444; *Knowlton v. Supervisors*, 9 Wis. 410; *St. Louis v. Speizel*, 90 Mo. 587; *State ex rel. v. O'Brien*, 89 Mo. 631; *State v. Railroad*, 75 Mo. 208. (4) The said section 5 is in conflict with the constitution of Missouri, in this: The general assembly can not extend the limits of a city, except by a local or special act due notice of which has been given as required by section 54, article 4 of the constitution, and, therefore, can not confer upon the mayor and council power to do so without the prescribed notice. (5) The proviso contained in said section 5 is the condition upon which the power to extend their limits is granted to cities of the second class, and the power is dependent upon the validity of the proviso. Therefore if the proviso is unconstitutional, the power falls with it, and the ordinance by which the mayor and council attempted to extend the city limits is null and void. *City of Kansas v. Cook*, 96 Mo. 127; *City of St. Louis v. Railroad*, 89 Mo. 44; *Warren v. Mayor*, 2 Gray (Mass.), 84; *Slawson v. Racine*, 13 Wis. 398; *Hines v. The People ex rel.*, 92 Ill. 406; 3 Am. Encyclopedia of Law, p. 676, note 4; *State ex rel. v. Dousman*, 28 Wis. 541. (6) The ordinance extending the city limits was adopted in July, 1889, and the Revised Statutes of 1889 did not take effect until the first day of November, 1889; therefore the power granted to cities of the second class by the forty-third clause of section 1255 of the Revised Statutes of 1889 to extend their limits, can not be invoked to uphold the ordinance. *Railroad v. Maquilkin*, 12 Kan. 301.

*Huston & Parrish* for respondent.

(1) The legislature has plenary power to originally fix or subsequently change and extend at will the territorial limits of a municipality, and to authorize this to be done.    Judge Dillon, in his work on Municipal Corporations, enunciates the rule of law thus: "Not only may the legislature originally fix the limits of the corporation, but it may, unless specially restricted in the constitution, subsequently annex or authorize the annexation of contiguous or other territory, and this without the consent of the persons residing in the corporation or the annexed territory." Dillon on Mun. Corp. [4 Ed], sec. 185, p. 267; *St. Louis v. Russell*, 9 Mo. 507; *Kayser v. Bremen*, 16 Mo. 88; *Giboney v. Cape Girardeau*, 58 Mo. 141; *Kelly v. Meeks*, 87 Mo. 396; *McCormack v. Railroad*, 20 Mo. App. 65; *Santa Rosa v. Coulter*, 58 Cal. 537; *Stilz v. Indianapolis*, 55 Ind. 515; *People v. Bennett*, 29 Mich. 451; *Blanchard v. Bissell*, 11 Ohio St. 96; *Westport v. Kansas City*, 103 Mo. 141; *State v. Westport*, 116 Mo. 582.    Where this power is exercised directly by the legislature, it is conclusive.    *Giboney v. Cape Girardeau*, 58 Mo. 141.    When exercised by the city under a power from the legislature, it is *prima facie* valid.    It is presumed to be properly exercised, but is not conclusive.    (2) The legislature has, in express terms, conferred this power upon cities of the second class. Session Acts, 1885, p. 51 and following; Session Acts, 1887, p. 53, sec. 5; R. S. 1889, subdiv. 43, sec. 1255, p. 368.    (3) Then the legislature having power to confer this authority, and, having conferred it, and that power having been exercised, the only question remaining on this branch of the case is whether, upon the whole case, the power has been exercised unreasonably.    In arriving at a conclusion on this contention

certain rules furnish the guide. The courts in determining whether a power has been unreasonably exercised, apply the same rules as applied in determining whether a law is constitutional or not—the presumption is in favor of a reasonable exercise of the power, and, before this presumption is overthrown, it must be made to appear so clearly that there can be no reasonable doubt of the fact. *Nier v. Railroad*, 12 Mo. App. 25; *City v. Riley*, 42 Mo. App. 18; *State v. Baird*, 15 S. W. Rep. 98. (4) The point that the exemption of certain lands from municipal taxation in section 5, Session Acts, 1887, p. 53, is unconstitutional, and that the entire section is thereby invalidated and void, is not well taken, for several reasons. *First.* Because it is not clear that such exemption is unauthorized. *City of Kansas v. Cook*, 69 Mo. 127; *United States v. Memphis*, 97 U. S. 300. *Second.* Because, even conceding that the exemption clause is obnoxious to the constitutional provision, yet it does not follow that the entire section is bad. · The rule is well settled that part of an act or section may be sustained, while another part fails on constitutional grounds. *County Court v. Griswold*, 58 Mo. 175. (5) If a repealing clause is only of acts and parts of acts inconsistent with the provisions of the statute, which is itself unconstitution and void, it has no effect. *Shepardson v. Railroad*, 6 Wis. 588; *Campau v. Detroit*, 14 Mich. 276; *Childs v. Shower*, 18 Iowa, 272; *Tims v. State*, 26 Ala. 165; *Devoy v. Mayor*, 26 Barb. 264; *Stephens v. Ballou*, 27 Kan. 594. (6) The point, $3\frac{1}{2}$, is not well taken. The legislature can not pass any local or special law changing the charter of cities. Sec. 53, art. IV, State Constitution. To change the limits of a city is to change its charter. *Westport v. Kansas City*, 103 Mo. 141. Then no special or local law could be passed by the legislature extending the limits of a particular city. The constitution provision

for notice has sole reference to such local and special laws as the legislature has power to enact. The constitution requires a classification of cities. Sec., 7 art. IX, Const. of Missouri. Any law for any such class is a general law. (Same section.) And is not in any sense a local or special law, and therefore it is conclusive that the constitutional provision as to notice is not applicable. *State v. Orrick*, 106 Mo. 111; *State ex rel. v. Hughes*, 104 Mo. 460; *Ewing v. Hoblitzell*, 85 Mo. 75; *State v. Walton*, 69 Mo. 558.

GANTT, P. J.—This is a proceeding to enjoin the collection of city taxes for the year 1892, on a tract of eight acres of land, by the city of St. Joseph, and involves the constitutionality of an act of the general assembly of this state approved March 30, 1887 (Laws of 1887, sec. 5, p. 53), under which the limits of said city were extended and said tract brought within the said limits.

The petition avers that prior to the first day of July, 1889, and the passage of the ordinance hereinafter described by the defendant, plaintiff's said real estate was situated outside of the corporate limits of the defendant; that on the first day of July, 1889, the common council of the city of St. Joseph passed an ordinance extending the corporate limits of said city of St. Joseph, so as to include within the corporate limits of said city the real estate of the plaintiff above described, which ordinance was, on the twelfth day of July, 1889, duly signed by the mayor of said city, and afterward published, as the law requires; that plaintiff's said land is distant from the inhabited part of the said city; that his said land was, at all times herein mentioned, and is now, kept and alone used for farming and gardening purposes; that said real estate has not at any time, by recorded plat, or otherwise, been

divided into lots for city purposes; that said real estate is not, and was not at the time of the passage of said ordinance, used for any city purposes whatever: such as opening streets, the construction of sewers, the laying of water or gas pipes, or any other known municipal use whatever, but was taken into said corporate limits of the defendant for the sole purpose of subjecting plaintiff's property to city taxation.

The plaintiff's said land and the residents thereon, or those residing in the immediate neighborhood thereof, did not, and do not now, need the police protection of the city, *nor have they received any such police protection of the city,* since said real estate was taken into the corporate limits of said city, nor any other benefit arising from said city government; that plaintiff's said land is not capable of being used as city property, nor is it demanded for that purpose, nor does it possess any value based upon its adaptation for residence or business. No streets of the defendant or other town improvement extend to plaintiff's land, and the line of the city settlement has not reached it, but on the other hand are far distant; it is not laid off for city uses; there is no settlement upon it; that plaintiff resides thereon with his family, and uses the same for farming and gardening; that the value of plaintiff's land has not been increased by being taken into the corporate limits of said city, but on the contrary thereof it has been diminished in value thereby.

That plaintiff's said *land by being thus placed within the corporate limits of said city,* and all of plaintiff's personal property, he being a resident upon said real estate, has become subject to assessment and levy to taxes by the defendant for each and every municipal purpose, by which the plaintiff or his said land are in nowise benefited.

He charges that such extension was unreasonable;

that he paid city taxes for the years 1890 and 1891, and that taxes for 1892 were assessed and levied, and he sought to enjoin the collection of the tax for the last mentioned year.

The answer admitted that the defendant was a city of the second class, and admitted the regular enactment of the ordinance extending the limits, and the assessment and levy of the tax for 1892, but denied every other allegation of the petition.

The evidence shows that the city limits were extended east opposite plaintiff's lot a half a mile, but that plaintiff's lot is considerably within this distance. The evidence further discloses that the Missouri river bluffs rise abruptly in an irregular formation extending north and south forming a barrier along about Fourteenth street, which is pierced by streets only at intervals where water-courses have made it possible. In the growth of the city the population has passed through these gateways, and, at the time the ordinance was passed, was rapidly peopling the table land on the north, east and south, which could only be reached by these openings in the palisade of the bluffs.

The lands occupied by plaintiff and his immediate neighbors are subdivided into lots of four, five, eight and ten acres and are principally devoted to gardening.

When the ordinance in question was passed, the city was growing very rapidly in an eastern and southern direction. Wyatt Park, to the north, then contained a large population beyond the old city limits. Parnell Place, South Park, and Hall's Additions were compactly built up communities; Donnell and Saxton's addition laid off in choice lots and all the lots built upon.

To the south of this tract was Gladstone Heights, an addition by Wm. G. Rush, Esq., who was, at the time of the trial, an alderman from this new territory.

In fact, we think the evidence clearly discloses that this new territory was either already platted and largely occupied, or had the prospect of becoming, in the near future, desirable urban property. Pacific street extends to this property, and has been worked each year, more or less, by the city. It has not been paved or improved, because the charter requires this to be done at the expense of abutting owners and they have not petitioned for the improvement.

It also appeared that the nearest route to the business part of the city from plaintiff's property is north and west by streets through a thickly populated community, and which all the way from plaintiff's lot is lighted by electricity furnished by the city at an annual cost for each light of about $85. Police have been furnished by the city to patrol this territory. The plaintiff admits that he registered and voted at the city election for the years 1890, 1891 and 1892.

During the pendency of this cause in the trial court, that court, on appellant's application, issued a temporary injunction, restraining the respondent from proceeding to enforce the payment of city taxes by appellant until the further order of said court. On the final hearing, the court dissolved the temporary injunction and dismissed appellant's bill. Appellant moved for a new trial, which being denied, he brings the case to this court by appeal, having given bond to operate as a *supersedeas*.

On the trial the court was asked to give certain declarations of law. It refused those asked by plaintiff and gave those prayed by the city. The two propositions relied upon to reverse the decree of the circuit court are, briefly, that the extension of the city limits was unconstitutional and void as to the plaintiff's land and other tracts adjoining him similarly situated; secondly, if the act and ordinance are constitutional,

still the ordinance is unreasonable, arbitrary, and oppressive, and should be so declared by the court.

I.   The constitutionality of the act of March 30, 1887 (Laws of Missouri, 1887, p. 53), and of section 5 thereof, is denied upon three grounds:  *First.*  It is asserted that the limits of the city could only be extended by local or special law after due notice given as required by section 54, article 4, of the constitution, and, as no such notice was given, it was void.  *Second.* That the *proviso* contained in section 5 of said act is in conflict with the constitution in that it exempts a class of property from taxation for city purposes in violation of article 10, sections 1, 2, 3, 4, 6, 7.  *Third.*  That the *proviso* in section 5 of the act of 1887 was the essential condition upon which the power to extend their limits over agricultural lands was granted to cities of the second class and the *proviso* being unconstitutional the ordinance is void.  Considering these in their order:

The act of 1887 in question is most clearly not a local or special law, and the objection that the general assembly could only extend the city limits by a local or special act is negatived by the constitution itself, article 4, section 53, clause 11, which prohibits the general assembly passing any special or local law, "incorporating cities, towns or villages, or *changing their charters.*"

The power to change the limits of a city, and authorizing it to exercise the taxing power over territory not included in its original limits is "*a change of its charter.*"  *City of Westport v. Kansas City*, 103 Mo. 141.  Not being, then, a local or special law, the provisions as to notice in such cases have no application. *State v. Orrick*, 106 Mo. 111; *State ex rel. v. Hughes*, 104 Mo. 460; *State ex rel. v. Field*, 119 Mo. 593, 24 S. W. Rep. 752.

Moreover, the constitution requires a classification of cities (article 9, section 7), and that their powers shall be defined by general laws: In pursuance of this last article the legislature made the classification required by the constitution by an act approved April 21, 1877. St. Joseph is, and was when the act of March 30, 1887, was enacted, a city of the second class under said classification. By section 5 of the act of March 30, 1887, "the mayor and council [of said city of second class] shall have power by ordinance to extend its limits, specifying the new line or lines to which the limits shall be extended, and the limits of the city, including the territory brought in; *provided, however, that no tract of land exceeding three acres in size so taken into the limits of any such city, 'shall be subject to municipal taxation for any purpose whatever, so long as such tract of land shall remain undivided into tracts less than three acres in size, and shall be used for agricultural or horticultural purposes or for dwelling house purposes in connection with a single dwelling house.*"

This brings us, then, to the point made that the exemption made in the above and foregoing *proviso* to section 5, is unconstitutional because by article 10, sections 1 to 7 inclusive, taxes are required to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all laws exempting property, other than that enumerated in the constitution, shall be void.

The act of 1887 amended the charter of cities of the second class as amended by the act of the general assembly approved March 12, 1885. By the first section of the act of 1885, cities of the second class could extend their limits without the restriction contained in the *proviso* to section 5 of the act of 1887.

This exemption in the *proviso* is in direct contra-

vention of the constitution.  But here we are confronted with the decision of this court in *City of Kansas v. Cook,* 69 Mo. 127, in which Judge NAPTON construed an exemption in the third section of the act of March 14, 1873, under the sixteenth section of the eleventh article of the constitution of 1865, as valid, but the provisions of the constitution of 1875, now under discussion, are new, and, without questioning that decision, because it is unnecessary, we have no doubt that an act, or ordinance, creating exemptions, other than those named in the constitution of 1875, is absolutely void to that extent.  *Kansas City v. Kansas City Medical College,* 111 Mo. 141; *State ex rel. v. O'Brien,* 89 Mo. 631.  The exemption in the act being void, then was the whole act void.

The rule is well settled in this state that part of an act or section may be unconstitutional without necessarily invalidating the remainder of the act or section. *County Court v. Griswold,* 58 Mo. 175; *Railroad v. Brick Company,* 85 Mo. 307; *State ex rel. v. Pond,* 93 Mo. 635; *Allen v. Louisiana,* 103 U. S. 80; *State ex rel. v. Field,* 119 Mo. 593.  Was, then, the *proviso* so inseparably connected in substance with that part of the act which is valid that it can not be supposed that the legislature would have passed the act at all without this exemption clause in it and therefore the whole act must fall because of this unconstitutional provision?

In determining, then, whether the general assembly of this state would have conferred upon cities of the second class the power to extend their limits without a clause exempting agricultural lands from municipal taxes, we may appropriately, we think, consider the course of legislation on this particular subject.  By the acts of 1885, page 51, cities of the second class were expressly empowered to extend their limits without any exemption clause whatever, and the same legislature

also authorized cities organized under special charters to extend their limits without this exemption.   Session Acts, 1885, see page 63.

Again, the legislature which passed the act of 1887 authorized cities having a population of over one hundred thousand inhabitants to extend, without such exemption.   Laws of 1887, page 49, section 41.   It also conferred the same power on cities of the third class. Laws of 1887, p. 66, section 2.   And in 1891 the same power was given cities of the fourth class.   Laws, 1891, p. 62, section 1.   And in 1889 the act of 1887 was amended by striking out the exemption clause now under consideration.   R. S. 1889, p. 368, clause 43, section 1255.

In view of all this contemporaneous legislation showing conclusively that the legislature has not hesitated to confer upon cities of all grades this power of self-extension without attempting to exempt such lands, counsel for respondent argues that there is little left upon which to base a presumption that the legislature would have denied the power to cities of the second class, unless the *proviso* had been inserted in the act. We confess we can see no reason why this power should be denied one class of cities and be conferred upon all others.   In either case it subjects the property so taken in, to municipal taxation.

On the other hand, it can not be doubted that the legislature had the unquestioned right to withhold the power of extension altogether, and necessarily the right to annex the conditions upon which it would confer the power, and the very fact that it granted the right to all other cities, and denied it to cities of the second class refutes the presumption *that the proviso* was immaterial or inadvertent.   On the contrary it emphasizes the determination of the legislature to withhold the power unless these farming lands were exempted from munic-

ipal taxes in cities of this class. It seems to us that the power to extend the limits over farming lands is by this act of 1887 made so dependent upon the condition of exempting them from municipal taxes, that, if the condition is unconstitutional (and we have seen that it is), then the whole section must be unconstitutional.

This was the conclusion reached by the supreme court of Wisconsin in *Slauson v. Racine,* 13 Wis. 398; and of this court in *Kansas City v. Cook,* 69 Mo. 127. We hold, then, that section 5 of the act of 1887, page 53, was, and is, unconstitutional, and, therefore, void. What, then, is the result? As already said, the charters of cities of the second class, as amended by the laws of 1885, section 1, page 51, contained this power to extend their limits unhampered *by the proviso* found in the act of 1887. Conceding, then, that the proviso rendered the whole of section 5 of the act of 1887 void, then, inasmuch as the act of 1887, section 17, page 57, only repealed "all sections, parts of sections, acts or parts of acts, laws or parts of laws, *inconsistent with, or in conflict with, the above act, as* section 5 of the act of 1887 is void, then there is nothing in the first section of the act of 1885 repugnant to the act of 1887 and section 1 of the act of 1885 remained in full force and effect. *Shephardson v. Railroad,* 6 Wis. 605.

In the case just cited, the supreme court of Wisconsin say: "As the act amending the charter of the company only repeals such parts of the *former charter as are inconsistent with the provisions contained in the amendment, and as those provisions* are repugnant to the constitution, and, therefore, inoperative, it follows conclusively that the provisions contained in the former charter of the company upon the subject are unaffected by the repealing clause contained in the amendment." *State ex rel. v. County Court,* 11 Wis. 50; *Tims v. The*

*State*, 26 Ala. 165; *Childs v. Shower*, 18 Iowa, *loc cit.* 272; *State ex rel. v. Blend*, 23 N. E. Rep. 511.

Where the repealing clause of an unconstitutional law is made applicable only to laws inconsistent with its operative provisions, then the former law is not repealed. *Devoy v. Mayor*, 36 N. Y. 449; *Stephens v. Ballou*, 27 Kan. 594. With these questions as to the validity of the law authorizing the extension of its limits resolved in favor of the city, the important question still remains, did the city exercise its power in such an unreasonable and arbitrary manner that the courts should declare the ordinance void solely on this ground.

Prior to the adoption of the constitution of 1875, it was the settled law of this state that the legislature, unless restricted by the constitution, could alter, amend, or abolish city and town charters of incorporations, and that the courts could not interfere with this legislative prerogative. *St. Louis v. Russell*, 9 Mo. 502; *St. Louis v. Allen*, 13 Mo. 400; *State ex rel. v. McReynolds*, 61 Mo. 203; *Giboney v Cape Girardeau*, 58 Mo. 141. But by the present constitution, cities are required to be classified and general laws enacted for their government. While it is true, as a general proposition, that the legislature can not delegate its legislative powers, it is now well settled that in the absence of constitutional restrictions the legislature may confer upon municipal corporations the power to extend their corporate limits, the reasonableness or unreasonableness of their acts in this behalf being subject to judicial inquiry and correction. *Kelly v. Meeks*, 87 Mo. 396.

Such ordinances in this regard are subject to the same tests as other corporate legislation. *St. Louis v. Weber*, 44 Mo. 547; *Corrigan v. Gage*, 68 Mo. 541; *Cape Girardeau v. Riley*, 72 Mo. 220; *Plattsburg v. Riley*, 42 Mo. App. 18. In arriving at a proper con-

clusion as to whether a given ordinance or order of court extending city limits is unreasonable, the courts have, in a general way, indicated the considerations that should govern. They are stated very clearly and satisfactorily by Judge HEMINGWAY in *Vestal v. Little Rock,* 54 Ark. 321, 15 S. W. Rep. 891, as follows:

"That city limits may reasonably and properly be extended so as to take in *contiguous* lands, (1) when they are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and (5) when they are valuable by reason of their adaptability for prospective town uses."

Applying these rules, the supreme court of Arkansas, in that case, held that lands across the Arkansas river were contiguous to Little Rock, and the order of annexation was not unreasonable because it included forty acres which was low, flat and wet, covered with timber and had not been platted, but platted lands of Argenta, an unincorporated town, touched it on two sides, but held that the forty acres of Vestal, which was from a half to three quarters of a mile distant from said unincorporated town of Argenta and on the opposite side of the river from Little Rock, and which was not platted, and to which no streets or other improvements extended, and on which there were no settlements, but was used entirely by the owner in his business as a farmer and florist, could not be annexed to the city.

Its value would not be enhanced by the annexation and it would be subjected to municipal tax without any benefit.

In *Ferguson v. Snohomish*, 36 Pac. Rep. 969, it was held not illegal to include two hundred and forty acres of land which was contiguous to the town, and occupied by its owner as a dairy farm. It appeared that a portion of the tract abutted on the block on which the courthouse stood and on the north and west of it were several additions to the town containing sixty inhabitants.

In a recent case in Texas, *McClesky v. State ex rel. Cottrell*, 23 S. W. Rep. 518, the rule in that state is thus summarized: "Under the decisions of our supreme court, we understand the correct rule to be that the incorporation will be held valid, although a reasonable amount of land not in actual occupation be included; but if the excess be such as, in effect, to evidence an attempted fraud upon the law, and territory be embraced that can not fairly be termed a part of the town, it will be annulled." *State ex rel. v. Eidson*, 76 Texas, 302; *State ex rel. v. Baird*, 15 S. W. Rep. 98.

The legislature having conferred the power upon the city the presumption is in favor of official conduct. St. Joseph increased from thirty-three thousand in 1880 to nearly fifty-five thousand in 1890. Its boundaries had been fixed in 1875 by its charter and it had outgrown them. When the ordinance was passed, Wyatt Park, itself a city in numbers, had sprung up to the east, and Gladstone Heights, south of plaintiff's land, had been platted, and so had Stiger's, though the latter was rejected because not approved. Most clearly, however, both Gladstone Heights and Stiger's Addition at that time were considered by their owners good urban

property.    Pacific street already touched plaintiff's property and when the extension was sought to bring in these additions plaintiff's property lying within their lines was needed for necessary highways.    The ordinance must be measured as of the time it was adopted. In the rapid increase of population and the unquestioned propriety of including Wyatt Park and other contiguous territory it was not unreasonable to include the intermediate small tracts of plaintiff and his neighbors.

Mr. Rush admits he was estopped because he urged the extension.    The number of acres taken in is not so disproportioned to the apparent demand therefor and to the size of the city to which they were annexed as would justify us at this distance in overruling the action of the city council, and the judgment of the circuit court, both of which tribunals understood the relation of the city to the plaintiff's tract better than we can.

There is nothing to indicate fraud on the part of the city in extending its limits.    It appears that it at once furnished electric lights to the new territory, worked the adjacent streets, and provided policemen for the district.    There is nothing to show that the city obtained any great advantage in the amount of taxes received in this territory over the necessary expenditures it must make to furnish lights, streets, and police protection.    Street car lines from the heart of the city approach very near to Gladstone Heights and through Wyatt Park to Oak Hill and the south.

That subsequent events have retarded the building up of this immediate section is true, but this fact alone does not impeach the good faith or the reasonableness of the ordinance in question.    The appellant acquiesced in the extension, registered and voted for city officers at the elections in 1890, 1891 and 1892, and paid his municipal taxes for two years without protest.

All the circumstances considered, we do not think

the plaintiff has sustained the burden of showing the ordinance was so unreasonable that the courts should hold it illegal and void. *State ex rel. v. Pond*, 93 Mo. 606; *City of Kansas v. Cook*, 38 Mo. App. 660; *County Court v. Griswold*, 58 Mo. 192; *State v. Able*, 65 Mo. 367; *Plattsburg v. Riley*, 42 Mo. App. 18.

Judgment affirmed. All of this division concur.