MARY C. PARKER, Respondent, v. JACOB ZEISLER, Collector, etc., Appellant.

St. Louis Court of Appeals, February 15, 1898.

1. **Municipal Corporations:** INJUNCTION TO STAY COLLECTION OF TAX UNDER ORDINANCE EXTENDING CORPORATE LIMITS. A proceeding by injunction to stay the collection of a tax, imposed under an ordinance extending the corporate limits of a city, is not an attack upon its corporate existence. In this state such an ordinance is subject to the same tests as other municipal legislation. *Copeland v. St. Joseph,* 126 Mo. 417.

2. ————: ORDINANCE EXTENDING CORPORATE LIMITS: CONSTRUCTION: VALIDITY. By section 4 of an ordinance of the city council of St. Charles extending the corporate limits, providing that the ordinance should not take effect until after receiving a majority of the votes of the legal voters of the city at an election held as therein provided, it was not the purpose of the council that the entire ordinance should not go into effect until after such election. In so far as it provided for holding the election, the ordinance went into effect when it received the approval of the mayor.

3. ————: ————: REASONABLENESS. An ordinance extending the corporate limits of a city so as to take in contiguous territory, suited for city purposes, densely populated, and already receiving many of the advantages of the city, is not unreasonable or inequitable.

*Appeal from the St. Charles Circuit Court.*—Hon. E. M. Hughes, Judge.

Reversed (*with directions*).

*T. F. McDearmon* for appellants.

*C. W. Wilson* for respondent.

The evidence shows that the ordinance extending the city limits was unreasonable and oppressive, and that it was entirely proper to hold it invalid on that ground. *Kelley v. Meeks*, 87 Mo. 401; *Corrigan v. Gage*, 68 Id. 544; *St. Louis v. Weber*, 44 Id. 547; *City v. Telephone Co.*, 21 Mo. App. 23.

A volunteer election could confer no authority on the mayor and council to extend the limits. It is essential to the validity of the election that it should be lawfully called by a competent authority. *State ex rel. v. Jenkins*, 43 Mo. 263; *In re Woolridge*, 30 Id. 618; *McClure v. Oxford*, 94 U. S. 433; *Marshall Co. v. Cook*; 38 Ill. 44, 48, 49; *State v. Ruark*, 34 Mo. App. 331, 332. See, also, Acts 1893, p. 67, sec. 2; *Knapp v. Kansas City*, 48 Mo. App. 485; *Trenton v. Clayton*, 50 Id. 535; *Kiley v. Oppenheimer*, 55 Mo. 376.

It was essential to the validity of the election, that it be held under the authority of some resolution or ordinance passed by the mayor and council, as a corporate body, that was in operation at the time the election was called and held. Whereas the ordinance under which the election was called and held, provides in the fourth section that the ordinance shall take effect after the election is called. *People v. Johnson*, 6. Cal. 673; *Couly v. Calhoun Co.*, 2 W. Va. 418; *Water Co. v. Kron*, 74 Cal. 222; *McClure v. Oxford*, *supra*; *George v. Oxford*, 16 Kan. 78–80; *Supervisors v. Keady*, 34 Ill. 293; *State ex rel. v. Jenkins*, *supra; In re Woolridge*, *supra; State v. Fiola*, 47 Mo. 318; *State ex rel. v. Gammon*, 73 *Id.* 421; *People v. Matheson*, 47 Cal. 447; *Neef v. McGuire*, 52 Mo. 493; *Kean v. Cushing*, 15 Mo. App. 96, 101; *St. Louis v. Alexander*, 23 Mo. 484, 520; *Eichenlaub v. St. Joseph*, 113 *Id.* 402; *Thompson v. Boonville*, *Id.* 282; *Irvin v. Devors*, 65 *Id.* 625; *Nevada v. Eddy*, 123 *Id.* 546; *State v. Webb*, 49 Mo. App. 407; *Leach v. Cosgill*, 60 Mo. 316–318; *City v. Clemens*, 52 Mo. 133.

APPELLANT'S REPLY.

Where it appears at any stage of the proceedings, either on the face of the petition or by answer, that the plaintiff has no capacity to sue, he is not entitled to any judgment. Sections 2043, 2044, Revised Statutes 1889, have no application to such a case. *Webbing v. Powers*, 25 Mo. 599; *Wescott v. Bidwell*, 40 *Id.* 146; *Leisse v. R. R.*, 72 *Id.* 562; *Brumley v. Golden*, 27 Mo. App. 160; *Ashburn v. Ayers*, 28 Mo. 77; *Steinkamper v. McManus*, 26 Mo. App. 52; *Steinman v. Strimple*, 29 *Id.* 478.

BLAND, P. J.—The plaintiff by her petition prayed that the defendant, as collector of the city of St.

Charles, be enjoined from collecting tax bills which had been issued against her by the city and placed in the hands of defendant for collection, amounting to $690.48. The grounds of her complaint in brief are that she owns and resides upon lots 1, 2, 7 and 8 of block 1, and lots numbered 1 and 8 of block number 2 in R. H. Park's addition to the city of St. Charles, which she claims is beyond the legal limits of the city, and for that reason said lots and her personal property are not within the jurisdiction of the city nor liable to taxation for city purposes. She further states that the right of the city to tax her property is based upon an ordinance approved on the thirteenth day of April, 1894, by which the city council undertook to extend its limits so as to embrace and take into such limits plaintiff's residence and the aforementioned lots. She avers that the ordinance extending the city's limits is illegal and void by reason of the following alleged facts:

*First.* That the extension was not made with the consent of a majority of the legal voters of said city in the manner required by law.

*Second.* That there was no lawfully called or legally authorized election held in the city of St. Charles submitting the question of extension of said city limits to the legal voters of the city.

*Third.* That the attempted extension of the city limits is illegal, unjust, inequitable and unreasonable, for the reason that it embraces and takes in a new territory that is composed almost exclusively of agricultural or farming lands.

*Fourth.* That plaintiff's property and residence do not and can not receive benefit by virtue of being taken into said city.

A demurrer was filed to the petition and overruled; an immaterial portion was stricken out on motion, and

then an answer was filed, admitting the ordinance extending the city's limits; pleaded another ordinance relating to the same subject, approved January 16, 1894; admitted plaintiff's property is within the limits as extended and the levy of the tax and the placing of the tax bills in the hands of the defendant as city collector for collection, and denied all other allegations. A motion to dissolve the temporary injunction which had been theretofore granted was filed; a hearing had; the motion to dissolve was overruled, and a perpetual injunction against the collection of the tax bills was awarded. After an unsuccessful motion to set aside this judgment the defendant appealed to the supreme court; that court decided that it had no jurisdiction, but that the jurisdiction to hear and determine the case was in this court, and so certified the case to us.

We are met at the threshold of this case by the contention of appellant that plaintiff has no legal capacity to sue; that the attack made INJUNCTION to stay collection of tax under ordinance extending corporate limits. upon the ordinance extending the limits of the city is an attack upon the charter of the city, a strike at its corporate existence, which can not be made collaterally in a petition for an injunction to stay the collection of a tax. Were this petition a thrust at the life of the city and its corporate existence were to be determined by the suit, this contention would have to be sustained, for it is well settled that the right to exercise the franchise of a municipal corporation can be tested in but one way—by *quo warranto* brought by the proper officers in the name of the state. Cooley on Const. Lim., 312; *State v. Bradford*, 32 Conn. 50; *Fredericktown v. Fox*, 84 Mo. 59; *St. Louis v. Shields*, 62 Mo. 247; *Kayser v. Trustees of Bremen*, 16 Mo. 88. The corporate existence of the city of St. Charles is not called in question by this proceeding; its corporate existence

is averred in the petition and was conceded by plaintiff throughout the trial. It is not the validity of the act incorporating the city of which plaintiff complains, but the validity of an ordinance passed by the city council, by which her property rights are affected. This may be done generally by any person against whom an attempt is made to enforce to his prejudice the provisions of an illegal ordinance, and in this state it has been repeatedly held that an ordinance extending the limits of a city are subject to the same tests as any other municipal legislation. *Copeland v. St. Joseph*, 126 Mo. 417; *Kelly v. Meeks*, 87 Mo. 396; *Warren v. Paving Co.*, 115 Mo. 572. In *Copeland v. St. Joseph, supra*, the validity of an ordinance extending the limits of the city of St. Joseph was tested by an injunction suit to stay collection of a city tax. In *Kelly v. Meeks, supra*, an ordinance extending the limits of the city of Kansas was tested by a replevin suit for some cows found within the new limits and impounded under an ordinance of the city.

In *Warren v. Paving Co., supra*, the validity of an ordinance extending the limits of the city of Westport was tested by a bill in equity to cancel tax bills issued for paving done on a boulevard in the new or extended limits. An extension of the limits of a city is necessarily a change of its charter, and in some states it is held that the validity of an ordinance extending the limits can only be tested by *quo warranto;* but the decisions of the supreme court of our state have taken a different view of these ordinances and hold them subject to the same tests as any other city ordinance. It is stated in the petition and admitted by the answer that St. Charles is a city of a third class. By the provisions of section 2, Acts 1893, page 67, the mayor and city council, with the consent of a majority of the legal voters of the city voting at an election

therefor, have power to extend the city's limits. It is contended by the respondent that this power was not legally and effectually exercised in this instance. On January 9, 1894, the city council passed the following ordinance:

"SECTION 1. The limits of the city of St. Charles, in the county of St. Charles, in the state of Missouri, are hereby extended so as to embrace and include all that part of said St. Charles county, lying within the following outboundary lines, to wit: (Description omitted.)

"SECTION 2. A proposition to extend the limits of the city of St. Charles as in the next preceding section set forth and described, shall be submitted to the voters of the city of St. Charles at an election to be held in said city on the 6th day of February, 1894.

"The mayor of this city shall give notice of such election by publication in the newspaper doing the city printing in this city; if there be no such paper, then said notice shall be published in any newspaper published in the English language in this city. Such notice shall be published at least fifteen days before the day of holding said election, and shall state the time and places of holding the same and shall clearly describe the outboundary lines of the proposed extension.

"Such election shall be held and conducted as other elections are held and conducted in this city.

"SECTION 3. The city clerk shall prepare and cause to be printed ballots to be used at such election which shall be in the following form:

"For extension of limits . . . . . . . . . . Yes
"For extension of limits . . . . . . . . . . No

"The former of which shall be taken as a vote assenting to such extension and the latter as dissenting therefrom.

"SECTION 4.    This ordinance shall take effect and this city's limits shall be extended and established as described and provided for in the first section of this ordinance when a majority of the legal voters of this city voting at the election herein provided for, vote in favor of said extension of the city's limits."

"Passed Jan. 9th, 1894.

"LOUIS RINGE, Presiding Officer."

This ordinance was approved by the mayor January 16, 1894, and was followed by the following proclamation made by the mayor:

"Mayor's Proclamation.
"Notice of special election.

"Notice is hereby given that a special election will be held in the city of St. Charles, in the state of Missouri, on Tuesday, February 6, 1894.

"Submitting to the qualified voters of said city of St. Charles, Mo., a proposition to extend the limits of the city of St. Charles, in the county of St. Charles, in the State of Missouri, so as to embrace and include all that part of St. Charles county lying within the following outboundary lines, to wit:    (Description omitted.)

"Polls will be open for the purpose of said election in the various wards in the city at 7 o'clock A. M., and kept open until 6 o'clock P. M. of said day at the following places, to wit:

"First ward—No. 324 South Main street (H. Meyer's).

"Second ward—City Hall Building.

"Third ward—No. 327 North Main street (E. Abeling's).

"Fourth ward—Hose, Hook and Ladder Company Hall.

"Said election will be held and conducted as other elections are held and conducted in this city.

"LOUIS RINGE,

"Mayor of the City of St. Charles.

"Attest:   H. C. SANDFORT,

"Clerk of the City of St. Charles, Mo."

This proclamation was published for four consecutive weeks in the *St. Charles Banner* (the paper doing the city printing), and in the *St. Charles Cosmos*, the last insertion of said notice being February 1, 1894.

The official ballot was as follows:

"Special election"

on

"Extension of City Limits.

"For extension of city limits . . . . . . . . . . . . Yes
"For extension of city limits  . . . . . . . . . No."

This official ballot was published in the *St. Charles Banner* on January 25 and February 1, 1884; and in the *St. Charles Cosmos* on January 24 and 31, 1894. An election was held in pursuance of the foregoing proclamation and notice and due returns were made thereof to the city council.   At this election five hundred and thirty votes were polled in favor of extending the city limits as proposed by the ordinance of January 9, and ninety-three votes against it.   Following this election on April 4, 1894, the city council passed the following ordinance extended the limits of the city:

"An ordinance establishing new limits of the city of St. Charles, in the State of Missouri.

"Whereas, an ordinance entitled 'an ordinance providing for the extension of the limits of the city of

St. Charles in the State of Missouri,' was duly passed by the council of the said city and approved by the mayor on the 16th day of January, 1894, wherein the proposed extended limits was particularly described and set forth, and wherein it was provided that a proposition to extend the said city's limits as therein described should be submitted to the voters of said city at an election to be held for that purpose on the sixth day of February, 1894, and whereas, at said election held on said day in pursuance of the provisions of said ordinance, a large majority of the voters of said city voting at said election voted in favor of so extending the said city's limits; now therefore

"Be it ordained by the council of the city of St. Charles, in the State of Missouri, as follows:

"SECTION 1. The limits of the city of St. Charles, in the county of St. Charles and State of Missouri, are hereby extended and established so as to embrace and include all that part of said St. Charles county lying within the following outboundary lines, to wit." (Description omitted.)

"SECTION 2. All ordinances or parts of ordinances conflicting with this ordinance are hereby repealed.

"This ordinance was approved by the mayor April 13, 1894."

The contention of appellant is that the election was a mere voluntary one and that no authority was vested in anyone to call the election. Section 2, Acts of 1893, *supra*, does not in terms confer the power on the city council and mayor to call the election. The authority is conferred to extend the limits of the city, when a majority of the voters voting at an election shall assent thereto. Express authority is granted to extend the limits of the city, but as a prerequisite to a

ORDINANCE extending corporate limits: construction: validity.

rightful exercise of this grant of power, the sanction of a majority of the voters of the city, voting at an election, favoring the proposed extension and to be procured. To call the election was therefore a necessary step to be taken, and the right to call it is necessarily implied in the grant of the power to extend the limits. *Union Depot v. R'y*, 105 Mo. 562; *Knapp v. R'y*, 48 Mo. App. 485; *Bluedon v. R'y*, 108 Mo. 439; *St. Louis v. Russell*, 116 Mo. 248. The intention of the legislature was to confer on the mayor and the city council the authority to call an election for the purpose of ascertaining the will of the voters of the city on a proposition to extend the city limits, and the courts will uphold their action in calling an election for that purpose, where it has been done fairly and in accordance with the forms of law. Conceding all this, the respondent contends that inasmuch as the ordinance of January 9, providing for the election, by its terms was not to take effect or have any force until after the election, that there was no ordinance or resolution of the city council and mayor authorizing the election—that it, the election, was purely voluntary and void. The purpose of section 4 of the ordinance providing that the ordinance should not take effect until after the election, was to hold in abeyance section 1 of the ordinance until after the election was held; this the law would have done without this provision. It was evidently not the intention of the council that the entire ordinance should not go into effect until after the election. Such a construction would make that part of the ordinance providing for the election destroy itself. One of the purposes of the ordinance was to provide for an election, and in pursuance of this provision the mayor issued his proclamation calling for the election, and the election was held in pursuance of the ordinance and proclamation. The intention of a legisla-

tive body is to be gathered from the whole ordinance, and not from a single clause of one of its sections, and when the intention is perfectly apparent and admits of no doubt, it will prevail over express words, when to give a literal meaning and application of such words would destroy the whole ordinance. We therefore hold that the ordinance, in so far as it provides for holding the election, went into effect when it received the approval of the mayor on January 16, and that the taking of effect of this part of the ordinance was not postponed until after the election, a time when it could not take effect, and after all of its force, if it had any at all, would have been expended. But conceding for the sake of the argument that the ordinance did not take effect before the election was held and that the election was held without any ordinance providing for it, the passage of the ordinance by the city council was an expression of the will of the council that the boundaries of the city should be extended according to certain metes and bounds, and equivalent to a resolution that an election should be held for the purpose of securing the assent of a majority of the voters of the city of such extension. This, followed by the mayor's proclamation calling an election in accordance with the expressed wish of the council, and the publication of notice of the election and of the ballot to be used, in the absence of any ordinance or statute defining the method of conducting such election, was sufficient to authorize the election to be held. *Alma v. Guarantee Sav. Bank*, 60 Fed. Rep. 203. Especially is this so in view of the fact that the election was proclaimed and advertised in the manner provided by sections 16 and 30, Acts of 1893, for holding special election for certain other purposes in cities of the third class, and that the election was held in the manner provided by general law for holding elections in municipal corpora-

tions. *The People v. Dutcher*, 56 Ill. 144; McCrary on Elections [4 Ed.], sec. 196.

A further objection to the ordinance is that it is inequitable, unjust and unreasonable. The plaintiff, by a clause in her petition, undertakes to strengthen her position by averring that she prosecutes the suit in her own behalf and for all others similarly situated. The petition is not to enjoin the collection of any and all tax levied in the annexed territory, but to enjoin the collection of tax levied on the personal and real property of the plaintiff, and in which she only is interested, and strictly speaking, the inquiry should be confined as to the reasonableness of the ordinance in so far as it affects the plaintiff; but the whole question was examined on the trial, was argued orally here, and is so presented in the briefs of counsel. Being a matter in which the city of St. Charles and all of its citizens are interested, we will examine the ordinance as to its justice and reasonableness taken in its entirety. There are ten additions to the original town of St. Charles, seven of which, according to a plat of the city filed with the record, are beyond the old city limits, and also a greater part of one other (McElhinesy's Addition). The city cemetery, the St. Charles county driving park and fair grounds were also outside the old city limits. The extended limits taken in, with the exception of two or three blocks, these additions, the cemetery and fair grounds, also some agricultural land, but not exceeding ten acres in any one tract. Some of the additions taken in are compactly built up with residences, about all of them are more or less built up and all have excellent building lots. Some of the principal streets leading from the business center of the city into the most thickly populated of these additions have been graded and macadamized at the expense of the

ORDINANCE extending corporate limits: reasonableness.

city beyond the old and for a considerable distance into the new limits; electric lights have also been put up in a portion of the new territory by the city, and according to the testimony, the city has for some time been endeavoring to close a contract for laying water mains in that portion of the new territory most densely populated, and where the plaintiff resides. In short, that many of the inhabitants in the new limits, and especially the plaintiff, are now receiving most of the city advantages enjoyed by the inhabitants in the old limits, and will in all probability in a short time be placed on an equality with them as to the city service and protection. It is also shown that the greater part of the agricultural lands embraced in the new limits is available for building purposes, and much of it well located for resident property. It certainly is desirable that the city cemetery should be within the limits, in order that it may be under the care and keeping of the city. The county fair grounds and driving park being so near the city, should be under the jurisdiction of the city that it may be properly policed. The peace and good order of the city and of the suburban residents who have been taken in by the extension of the limits, it seems to us, demand that police regulation and surveillance, which can only be afforded by extending the city's jurisdiction commensurate with the extended city limits.

In *Vestal v. Little Rock*, 54 Ark. 321, it was said that "city limits may reasonably and properly be extended so as to take in contiguous lands, *first*, when they are platted and held for sale or use as town lots; *second*, whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner; *third*, when they furnish the abode for a densely settled community, or represent the actual growth of the town

beyond its legal boundary; *fourth*, when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and, *fifth*, when they are valuable by reason of their adaptability for the prospective town uses." These rules were approvingly cited and applied by our supreme court in *Copeland v. St. Joseph*, 126 Mo. 417. Applying these rules to the case at bar, we find that the ordinance of April 13, 1894, extending the limits of the city of St. Charles, is not inequitable nor unreasonable, and that it is valid. The judgment of the lower court is reversed, with directions that it set aside the order overruling the defendant's motion to dissolve the temporary injunction, that the motion be sustained, the injunction dissolved and that plaintiff's bill be dismissed. All concur.