BERNARD H. STOLTMAN, Respondent, v. THE CITY OF CLAYTON, Appellant.

St. Louis Court of Appeals. Opinion Filed December 7, 1920.

1. **MUNICIPAL CORPORATIONS: Extending City Limits: Ordinance: Reasonableness: May be Questioned by Owner of property in Annexed Territory: Equity: Injunctions.** Where the object sought to be obtained by a suit against a municipal corporation does not strike at the life or existence of the defendant as a municipal corporation, but at the reasonableness of its corporate legislative act in extending its boundary lines, a bill in equity is a proper method of procedure by one having a special interest in such legislative action extending such limits.

2. ———: ———: ———: ———: **Evidence: Presumptions: Ordinance of Extension Unreasonable.** In a suit in equity to have declared unreasonable and void an extension of the city limits of a municipal corporation, and such corporation restrained and enjoined from exercising municipal authority and levying and assessing taxes over the territory thereby annexed, where the evidence shows that only a very small portion of the annexed land had been platted into lots; that the area involved appears to have acquired its greater value not on account of its proximity to such corporation, nor on account of its adaptability to town use, but on account of its adaptability for country homes, and that the population therein was either purely agricultural or the outgrowth of another city, etc., *held* that is was unreasonable to subject all of the annexed territory to municipal control and burdens, and the presumption that the ordinance of extension was reasonable was overcome by the testimony in the case.

3. ———: ———: ———: **Ordinance of Extension Unreasonable: Decree.** In a suit in equity seeking to have declared unreasonable and void extension of the city limits of a municipal corporation and to have such corporation enjoined from exercising municipal authority over the annexed territory, a decree "forever" enjoining such municipal corporation from extending its limits

Stoltman v. City of Clayton.

over the territory described in the ordinance *held* erroneous, and that the decree should be that the defendant, its officers and all persons operating through or under them be forever enjoined from putting into force and effect the ordinance extending the limits of defendant's city, and from exercising, under and by virtue of said ordinance, any municipal authority or function, including the levying and assessing of taxes, over the lands and upon the inhabitants of the territory sought to be annexed by said ordinance.

Appeal from the Circuit Court of St. Louis County.— *Hon. G. A. Wurdeman.* Judge.

REVERSED AND REMANDED (*with directions*).

*C. C. Wolff* and *A. E. L. Gardner* for appellant.

(1) The plaintiff cannot sue by injunction to test the right of a city of the fourth class to extend its limits; so as to take in contiguous territory must be assailed directly by the State in *quo warranto,* or other direct proceeding by the State, and cannot be collaterally attacked as in this case. citing the following cases, to wit: Kayser v. Trustees of Bremen, 16 Mo. 88; State ex rel. v. Mineral Land Co., 84 Mo. App. 32; City of Salem ex rel. Romey v. Young, 142 Mo. App. 160; Inhabitants of Fredericktown v. Fox, 84 Mo. 65; Flynn v. The City of Neosho, 114 Mo. 573; State ex rel. v. Birch, 186 Mo. 205, 221; Kansas City v. Stegmiller, 151 Mo. 209; School Dist. v. Hodgin, 180 Mo. 70. (2) Under the provisions of section 9300, Revised Statutes 1909, the Mayor and Board of Aldermen of a city of the fourth class, with the consent of a majority of the legal voters of such city voting at an election therefor, have power to extend the limits of such city over territory adjacent thereto, when in their judgment and discretion such extension may redound to the benefit of the city. Copeland v. St. Joseph, 126 Mo. 432; State ex rel. v. Birch, 186 Mo. 205; State ex inf. v. Kansas City, 233 Mo. 213; Hislop v. Joplin, 250 Mo. 599; State ex rel. v. Mining Co., 262 Mo. 490; State ex rel. Romey v.

Young, 142 Mo. App. 160; State ex rel. Lashly v. City of Maplewood, 193 S. W. 989.  (3) The mere fact that the land taken in by such extension is used for agricultural purposes and is not all platted does not make such extension unreasonable.  Copeland v. City of St. Joseph, 126 Mo. 432; State ex inf. v. Fleming, 158 Mo. 558; State ex rel. v. Birch, supra; City of Salem ex rel. v. Young, 142 Mo. App. 160.  (4) The question of benefits of the extension of the city limits is a legislative and not a judicial one, and the passage of the ordinance of extension makes a prima-facie case of reasonableness. Parker v. Zeisler, 73 Mo. App. 537; Pryor v. Construction Co., 170 Mo. 451; City of St. Louis v. Weber, 44 Mo. 550; Morse v. Westport, 110 Mo. 502; Copeland v. St. Joseph, 126 Mo. 431; State ex inf. v. Kansas City, 233 Mo. 214; Hislop v. Joplin, 250 Mo. 599; Dillon on Municial Corporations, section 649.

*Paul Bakewell, Jr.,* for respondent.

(1)   An equitable action will lie in the instant case for an avoidance of the ordinance and an injunction, and there are precedents for its use in similar cases. Hislop v. Joplin, 250 Mo. 588; Copeland v. St. Joseph, 126 Mo. 417; Parker v. Zeisler (Collector), 73 Mo. App. 537.   (2) The resistance to taxation made by owners of property included in a municipality, on the ground that the ordinance of extension is unreasonable, and, therefore, void, does not constitute a collateral attack on the corporate entity, and is a proper procedure. State ex rel. v. Birch, 186 Mo. 205, 220; State ex rel. v. Mining Co., 262 Mo. 490, 504; Plattsburg v. Riley, 42 Mo. App. 18; Warren v. Barber Paving Co., 115 Mo. 572.   (3) Injunction will lie to restrain the enforcement of an invalid city ordinance in order to prevent a multiplicity of suits.  Coal Co. v. St. Louis, 130 Mo. 323, 329. (4) Suits may be brought by any taxpayer, for himself and others, similarly situated, to prevent the collection of an illegal tax.  Ranney v. Rader, 67 Mo. 476, 480; Newmeyer v. Railroad, 52 Mo. 81; Dennison v. City of

Kansas, 95 Mo. 416, 429. (5) The reasonableness of an ordinance extending city limits is a subject of judicial inquiry. State ex rel. v. Mining Co., 262 Mo. 505; Salem ex rel. v. Young, 142 Mo. App. 160, 170; State ex rel. v. Birch, 186 Mo. 219; State ex rel. v. West Plains, 163 Mo. App. 166, 171. (6) The city of Clayton, and not its individual officers, is the proper defendant. State ex inf. v. Fleming, 158 Mo. 568. (7) Courts will avoid the incorporation of a municipal corporation where it encloses, within the limits of the town, large tracts of land devoted exclusively to agricultural purposes. State ex rel. v. McReynolds, 61 Mo. 203; State ex inf. v. Bellflower, 129 Mo. App. 138; State ex rel. v. Small, 131 Mo. App. 470. (8) A city may reasonably extend its limits and take in contiguous property when: First. They are platted and held for sale or use as town lots. Second. Whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owner. Third. When they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary. Fourth. When they are needed for any proper purpose, as for the extension of its streets, or sewer, gas or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation, and Fifth. When they are valuable by reason of ther adaptability for prospective town uses; but the mere fact that their value is enhanced by reason of their nearness to the corporation would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town use. State ex inf. v. Kansas City, 233 Mo. 213; Hislop v. Joplin, 250 Mo. 599; Copeland v. St. Joseph 126 Mo. 432. (9) City limits should not be so extended to take in contiguous land: First. When they are used only for purposes of agricuture or horticulture and are valuable on account of such use. Second. When they are vacant and do not derive special value from their adaptability for city uses. State ex inf. v. Kansas City, 233 Mo. 214;

1 McQuillin, Municipal Corporations, p. 619, section 273.

BARNES, C.—This suit in equity was filed on the 25th day of July, 1917, in the Circuit Court of St. Louis County, Missouri. Plaintiff seeks to have declared unreasonable and void an extension of the city limits of Clayton, consummated on the 12th of September, 1916, and defendant restrained and enjoined from exercising municipal authority and levying and assessing taxes over the territory thereby annexed, and the residents thereof.

In plaintiff's petition it is alleged: that the defendant is a city of the fourth class; that plaintiff owns some ten acres of land upon which he erected a dwelling house, in which he resides, and that his ten acre tract is within the area included in the extension of the city's limits; that the Board of Aldermen of the City of Clayton passed an ordinance to change and extend the corporate limits of the city, which was approved by the Mayor, submitted to the voters of the City of Clayton, and an election held thereon; that by ordinance approved by the Mayor, the result of said election was ordained and declared to be in favor of such extension, and extended the limits of said city in accordance therewith; that by said extension his real estate is now included within the limits of said city, and that plaintiff has now become a resident of said city.

The grounds upon which the petition avers the ordinance is unreasonable, are:    that said ordinance undertook to extend the corporate limits of the City of Clayton, westwardly, over a strip of territory approximately one and one-fourth miles east and west and of a like width north and south, covering some ten hundred and twenty-five acres; that there had been no growth or increase in the population of the city sufficient to necessitate such extension for any proper municipal purposes; and avers, that there had been no substantial increase in the population of said city, except an increase in area of population occasioned by a previous extension of the city limits eastwardly, made in the year 1913; that the land of plaintiff, included in such extension, is

used as a site for plaintiff's residence, a portion thereof is under cultivation, and that it is distant from the inhabited part of said city; that practically the entire land included within the limits of said extension is kept and used for farming and gardening purposes, and none of the ground has been platted or held for sale as town lots, or divided into lots for said purposes, and none of said real estate is held to be brought on the market and sold as town property when it reaches a value corresponding with the views of the owners; that none of said real estate furnishes an abode for a densely settled community, or represents the actual growth of the town beyond its former legal boundary; that none of the real estate is needed for any proper city purpose, as extension of its streets or sewers, gas or water system, or to supply space for the abode or business of its residents, or for the extension of needed police regulation; that none of said real estate is valuable by reason of its adaptability° for prospective town uses, and that whatever value his real estate possesses is for farming or gardening purposes, or for the purpose of country residences for those desiring to live in the country within close proximity to the city of St. Louis; that the value of the land has not been increased by being taken into the corporate limits of Clayton, but on the contrary has been diminished thereby; that neither the land nor those residing thereon need the police protection, nor has either the land or residents thereof received any police protection since being taken into the limits of the city, nor have they received any other benefits from said city government; that none of the lands in the area covered by the extension can be used as city property, nor demanded for that purpose, and it has no value based upon its adaptation for residences or business: that the city settlement has not reached the annexed territory, but is far distant; and that the annexed territory is not laid out for city uses; and that there is no settlement upon it, on the contrary the annexed territory is sparsely settled, not more than forty houses on the ten hundred and twenty-five acres.

The petition further alleges; that the city of Clayton has no municipal water or light plant, and that the water, light and gas are furnished to the inhabitants of the city by private corporations, which are and for a long time have been fully prepared and equipped to supply the annexed territory with their products, and had in fact supplied and are still supplying such of the residents of the annexed territory as require their products. That the annexed territory is traversed by only one through road running north and south, and by one through road running east and west; and that the roads bounding the annexed territory on the west and south are excluded from the corporate limits of the city by said ordinance; by reason whereof, the larger amount of annexed territory adjoining the said roads, while subject to municipal taxes, would be deprived of the benefit of said streets; that plaintiff's land fronts on the north line of the Clayton Road, which line is the southern boundary of the limits as extended; that no street lights, sewers, police protection or city conveniences have been furnished in the annexed territory, or any work done, by the city of Clayton upon the two roads in the annexed territory; and that the effect of annexation is to work a fraud upon the rights of plaintiff and others; and that the sole purpose for annexing the territory was to subject the real estate and the residents of said annexed territory to city taxation, and that no possible benefit can enure to plaintiff or others similarly situated.

The petition further charges, that for the reasons therein alleged, the ordinance extending the limits of the city of Clayton westwardly is unconscionable, oppressive, unreasonable and unjust, and its effect is to work a fraud upon the residents of the district; that said ordinance of extension is against the wishes of the majority of the property owners in the district included, and against their interests, and that the result of said ordinance will be to impose upon said plaintiff, and all other residents of the annexed territory, the burden of municipal taxes without their deriving any benefit therefrom; that by reason of said extension the land and personal property of the

plaintiff, and other residents of such annexed territory, has become subject to assessment and levying of taxes by the defendant for such and every municipal purpose by which the plaintiff and his land are in nowise benefited.

The petition further avers, that in February, 1916, prior to the passage of the ordinance of extension complained of, a bond issue was authorized by the voters of St. Louis County, under sections 10520 to 10525, Revised Statutes of Mo., 1909, the proceeds of which bonds were to be used for the construction and improvement of county roads; that at that time the roads in the territory annexed by the ordinance complained of, were subject to improvement, construction and maintenance, out of the proceeds of said bond issue, without additional cost or special charges against the plaintiff or other property holders in the annexed territory, all of which would be of substantial benefit to plaintiff and others similarly situated; that by the inclusion of the annexed territory within the corporate limits of the city of Clayton, the roads in said territory have become city streets, and that under the law of this State, the proceeds of said bond issue cannot be used to improve, construct or maintain city streets, and that in order to improve, construct or maintain the roads, which by said annexation have become city streets, plaintiff's property and other real estate in the annexed territory will be subject to special taxation; that by reason of the extension plaintiff and others similarly situated and effected, are deprived of the substantial rights and benefits which would accrue to them had the corporate limits not been extended, and the plaintiff and others will become subject to the burden of special taxes and assessments for the improvement, construction and maintenance of said streets.

Plaintiff further states, that by reason of this residence being included in the corporate limits of Clayton, his personal property is subject to license fees and charges in accordance with the ordinances of said city; and that the officers of said city demanded, and are now demanding, payment of a municipal license fee imposed upon owners of vehicles residing in the city, and have

threatened and are threatening. prosecution for failure to pay said license fee.

The petition further alleges, that plaintiff is informed and believes and duly alleges the fact to be, that the officers of said city have levied and assessed, and are threatening to levy and assess municipal taxes on his and all other real estate in the annexed territory, and are attempting to enforce their collection; that said levy and assessment constitutes a cloud on plaintiff's title; further, that the officers of the said city of Clayton are attempting to exercise further acts of municipal authority over said annexed territory and the inhabitants thereof; that the premises considered, the imposition or collection of license fees or taxes, or any other exercise of municipal authority over the annexed territory is unauthorized and without foundation in law.

Plaintiff further alleges that the acts and threatened acts of defendant affect not only himself, but all other residents and property owners in the annexed territory, and that he brings this suit on behalf of himself and of such other residents or tax payers, similarly interested or affected, as may care to join therein; further, that the wrongs complained of, and similar wrongs, will be continuous, and that plaintiff has no adequate remedy at law, and that resort to equity. is necessary in order to prevent a multiplicity of suits, and in order to remove the cloud cast upon the title to plaintiff's property.

The prayer of the petition asks that the ordinance extending the limits be declared void, and of no effect, and that the defendant and its officers be restrained and enjoined from levying or assessing municipal taxes against the land or residents within the territory annexed by the terms of the ordinance; and from collecting or attempting to collect license fees or charges, and from exercising municipal authority or functions over the territory included within the corporate limits of the said city of Clayton, by the terms of the ordinance, and over the residents thereof, and for such other relief as the court might deem proper.

By its answer, defendant admitted that it was incorporated as a municipality of the fourth class; the enactment of the ordinance as alleged by plaintiff; that as a result of the extension, plaintiff's real estate is included within the limits of the city of Clayton, and that plaintiff's real estate, together with his personal property, has become subject to assessment and levy of taxes, by defendant city, for municipal purposes.

Further answering, defendant alleged that it had been in the exercise of corporate power over the territory annexed, including plaintiff's said real estate, since the passage and approval of said ordinance. Defendant then denied the allegations in the petition, except those specifically admitted. The decree was for plaintiff. Defendant appealed.

The city of Clayton is the county seat of St. Louis County. From history we learn it was laid out in 1878 on a tract of four acres donated by Mrs. Hanley for the public buildings; and it was named after Ralph Clayton, who donated 100 acres of land.

From the evidence it appears Clayton contained some 400 acres at the time of its incorporation as a city of the fourth class. The temple of justice was on a high point, and about a block and a half from the western boundary line of the city. The south end of the western boundary line is marked by the North and South road. In approaching the business district of the city from the south, along the North and South road, it is necessary to turn east one block, to the street running on the west side of the court house. The area west of the courthouse fronting on this street is practically built up with business houses. The remainder of the town seems to be amply provided with business houses, and the residence district is built up with reasonable compactness. The population runs between 1000 and 1500, at any rate some ten years prior to the institution of this suit there was a boom which increased the population in the neighborhood of 500, since which time as to the original town it has remained practically stationary. In 1913 Clayton extended

its limits east, so as to take in 1000 acres of territory, on which there was about 92 houses, and a population estimated between 125 and 200. In 1916 the city of Clayton again undertook to extend its boundary lines. This time in a westerly direction for a distance of about one and a quarter miles, and having a width of a mile and a quarter, so as to include approximately ten hundred and twenty-five acres, and it is this latter extension against which this suit is directed. The last extension is bounded on the south by the north line of the Clayton Road, and on the west by the east line of the Price Road. In the area of this extension there are 46 houses, a few of which are termed "shacks," the remainder, however, and by far the greater portion, being comfortable, and in many instances handsome and commodious homes.

The Ladue Road runs from the city of Clayton across the territory sought to be annexed, to the Price Road, cutting off of the north end about a third of the area. Running north and south across the area is the unopened but platted Gay Avenue, which cuts off of the eastern end a third of the area; and approximately midway between Gay Avenue and the Price Road is the McKnight Road, running north and south. Between Gay Avenue and the western limits of Clayton, as extended in 1913, is a tract of land known as the Davis tract, comprising about 500 acres, which is in pasture and corn. Immediately west of the Davis tract are tracts of 40.09 acres, not cultivated; of 100.5 acres in corn and hay; of 32.23 acres, in clover; and 111.71 acres, in hay. Between some of these tracts and the McKnight Road are five other tracts varying in acres, from 5 to 10 acres or more, 4 of them are used as country homes, or for truck gardening or agriculture; the 5th tract was platted as West Clayton, none of the streets, however, have been opened, and the tract platted as West Clayton is utilized for general gardening. Such is the size and uses of the various tracts lying between the McKnight road and the western line of Clayton as extended in 1913.

The remainder of the area, that is, between the McKnight and Price roads, are tracts: of 34.5 acres, in corn

and tomatoes; 28 acres, as a maple grove; 39.15 acres, in a truck garden or vacant; 20 acres, cultivated; 24.59 acres, previously in corn and rye; other tracts contain 30.13 acres; 17.30 acres; 16.35 acres; several, approximately 10 acres each, and the remainder in three to five acre tracts, with the exception of two small areas, one platted as Boschert's Addition, which is divided into 100-foot lots, and upon which there are seven or eight residences; the other, Clayton Heights, about one mile south of Boschort's Addition, the lots of which are platted but not divided into lots, nor are the roads actually opened, on the contrary Clayton Heights was unheard of by some of the witnesses and the land represented by such plat was being cultivated. Practically all of the residences occupied by their owners are the residences of St. Louis business men, or the residences of truck gardners.

The estimated value of this entire area varies from $300 to $400 per acre, its average perhaps being $1500 per acre, at any rate its value is greatly in excess of its value as agricultural lands for the production of ordinary agricultural products. The value of these lands appears to have been arrived at by all the witnesses on account of its availability for country homes, and its proximity to the city of St. Louis, although a few witnesses ascribe some additional value to the Davis tract because of its adjoining the said city of Clayton.

The city of Clayton has no public sewers, but such of its sewerage as is carried in mains is through private sewer mains, nor does the city of Clayton have a municipal light, heat, water or gas plant, but relies upon and is served by public utilities outside of said city for these conveniences. The major portion of the annexed area is served by the same public utilities, that is, light, water, gas and telephone. The annexed territory also enjoys the laundry, paper carrier, butcher, baker and kindred services and facilities from St. Louis, not from Clayton.

It was agreed by counsel for the parties: first, that the defendant corporation, through its officers and agents, has levied and assessed taxes against the real and per-

sonal property included within the limits of the city of Clayton,, by ordinance of the extension complained of; second, that the defendant corporation and its officers have exercised and are continuing to exercise municipal authority; third, that the map and plat from which we have heretofore indicated the area of various tracts within the territory annexed, was the true and correct map and plat of the city of Clayton, as it existed originally by the extension in 1913, and extension of 1916, the two extensions being indicated in black and red ink respectively, the original city in black.

It is further stipulated that the map and plat might be introduced and used as evidence in the trial, and that the levy and assessment of taxes, license fees and other acts of municipal authority over the territory effected, are admtted by the stipulation, and that the stipulation itself may be used as evidence, and no other proof of exercise or acts of municiual authority over the property involved shall be necessary.

The passage of the ordinance and the ordinance ratifying the election were admitted, that is, no irregularity is claimed with reference thereto.

The motive actuating many of the residents in the annexed territory to locate therein was to escape the lights, noise, smoke, dirt and traffic incident to congested city life, and to surround themselves and their families with the quiet, comfort and freedom incident to a rural life; to enjoy a plot of ground of some size, grow their own vegetables and fruits, keep cows, ducks, chickens and pigeons, which would be of serious annoyance, if not a nuisance, in the city.

The city of Clayton is bordered on the north by University City, on the east by the City of St. Louis, and partially on the south by Richmond Heights.

Immediately south of Clayton as originally incorporated, and about one mile distant, is the manufacturing establishment of Evans & Howard. The intervening ground is not within the corporate limits of any city; and with the exception of that bordering on the North and

South and the Clayton roads is not desirable for country residences.

The motives which actuated the city of Clayton to undertake the western extension is set forth by its mayor as a necessity, in the construction of a sewer system for Clayton, to have two draws on the Davis land, which could not be obtained by condemnation until brought within the city boundaries; and because the city was a-fraid that University City might undertake to extend its boundary lines south along the west limits of Clayton, thereby cutting off all possibility of its extending westward.

A creek which cuts across the Davis land, cuts across the Clayton Road about 1000 feet west of Clayton, as extended in 1913, it also cuts across the North and South Road, but it is contended that the draws on the Davis tract are nevertheless necessary to the proposed sewer system to be installed by the city of Clayton. The plans for the sewer system are not in evidence. The draws in the Davis tract are all east of the unopened Gay Avenue.

The city of Clayton has installed two public hydrants in the annexed area, and let contracts for some 36 or 40 lights on the McKnight and Ledue roads. The Street Commissioner also testified that he spent about $1000 on the McKnight and Ledue roads. On behalf of plaintiff it was shown what was spent on the McKnight road was obtained by special contribution, and there is no showing as to the source of the funds expended on the Ledue road, the major portion being expended for oil and gravel, and apparently after this suit was insti-tuted.

The mayor further testified that the reason for not including the Clayton and the Price roads in the extension was to evade the expense of their up-keep.

The children of this area do not attend the Clayton School, which is some two miles distant, but attend the Central School, and while the extension of the city limits of Clayton, whether valid or void, did not change the boundary lines of the school district, the children

attending the Central School have been required to pay tuition of a dollar per month.

With reference to the effect of the extension of Clayton over the property involved, practically all of the witnesses for plaintiff testified that it tended to reduce the value of their property, because bringing it within the limits of Clayton, thereby subjecting it to that municipal government.. While a few witnesses testified that there was some increase in value, due to the proximity of the lands of Clayton, by far the greater weight of the testimony shows that the value of the lands in the area involved, insofar as they exceed the normal value for purely agricultural purposes, is due to the proximity of the lands to the city of St. Louis rather than to the city of Clayton, and adaptability for country homes.

Appellant contends that an action to test the corporate authority of a city can only be instituted by the State by procedure in the nature of *quo warranto,* and that the plaintiff in this case cannot maintain this suit.

The authorities in this State seem to be, that the existence of a municipality or the validity of its charter can only be inquired into by the State itself, by action in the nature of *quo warranto* or other direct proceedings. [Kayser v. Trustees of Bremen, 16 Mo. 88, 90; Parker v. Zeisler, 73 Mo. App. 537, 541; The Inhabitants of Fredericktown v. Fox, 84 Mo. 59, 65; City of St. Louis v. Shields, 62 Mo. 247; School District No. 35 v. Hodgin, 180 Mo. 70, 78, 79, 79 S. W. 148; City of Salem ex rel. v. Young, 142 Mo. App. 160, 170, 125 S. W. 857.] That validity of the extension of municipal boundary lines may be inquired into by the State by an action in the nature of *quo warranto* or other direct proceeding. [State ex rel. v. Mineral Land Co., 84 Mo. App. 32, 39; State ex inf. Lashly v. City of Maplewood, 193 S. W. (Mo. App.) 989; State ex rel. Hogan v. City of West Plains, 163 Mo. App. 166, 147 S. W. 163; State ex inf. Atty. Gen'l. v. Kansas City, 233 Mo. 162, 134 S. W. 1007; Kansas City v. Stegmiller, 151 Mo. 189, 209, 52 S. W. 723; State ex rel. White v. Small, 131

Mo. App. 470, 480, 109 S. W. 1079.] And that the extension of the boundary lines of a municipal corporation does not rise to the dignity of an original act of incorporation. [See State ex rel. v. Birch, 186 Mo. 205, 220, 85 S. W. 361; Warren v. The Barber Asphalt Paving Co., 115 Mo. 572, 22 S. W. 490; Parker v. Zeisler, 73 Mo. App. 537, 541.] That such an ordinance is void if unreasonable, and its reasonableness is subject to judicial inquiry in which will be applied the same test as to other corporate legislation. [See State ex rel. v. Birch, 186 Mo. 205, 219, 85 S. W. 361; City of Salem ex rel. v. Young, 142 Mo. App. 160, 170, 171, 125 S. W. 857; State ex rel. v. Mining Co., 262 Mo. 490, 505, 171 S. W. 356; City of Cape Girardeau v. Riley, 72 Mo. 220; Corrigan v. Gage, 68 Mo. 541; Parker v. Zeisler, 73 Mo. App. 539, 542; Kelly v. Meeks 87 Mo. 396; Copeland v. St. Joseph, 126 Mo. 417, 431, 29 S. W. 281.] And the test of the reasonableness of such an ordinance has been applied at the instance of individuals, by bill in equity seeking injunctive relief. [Parker v. Zeisler, 73 Mo. App. 537, 542; Hislop v. Joplin, 250 Mo. 588, 157 S. W. 625; Copeland v. The City of St. Joseph, 126 Mo. 417, 29 S. W. 281; Warren v. Barber Asphalt Paving Co., 115 Mo. 572, 22 S. W. 490.]

It therefore appears to us that since the object sought to be attained by the present suit does not strike at the life or existence of the defendant as a municipal corporation, but at the reasonableness of its corporate legislative act in extending its boundary lines, that a bill in equity is a proper method of procedure by one having a special interest in such legislative action extending such limits, and that it was proper for the learned trial judge to give plaintiff his day in court and to entertain his bill.

With reference to the reasonableness or unreasonableness of the ordinance, we, likewise, are of the opinion reached by the learned trial judge.

The test which has received the approval of our Supreme Court is stated, in State ex inf. v. Kansas City, 233 Mo. 162, 213, 214, 134 S. W. 1007, to be: "1. That

the city limits may reasonably and properly be extended so as to take in contiguous lands (1) when they are platted and held for sale or use as town lots, (2) whether platted or not, if they are held to be brought on the market and sold as town property when they reach a value corresponding with the views of the owners, (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary, (4) when they are needed for any proper town purpose, as for the extension of its streets or sewer, gas or water system, or to supply places for the abode or business of its residents; or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective town uses; but the mere fact that their value is enhanced by reason of their nearness to the corporation would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town use."

"  . . . further, that city limits shall not' be so extended as to take in contiguous lands, (1) when they are used only for the purpose of agriculture or horticulture, and are valuable on account of such use; (2) when they are vacant and do not derive special value from their adaptability for city uses." [State ex inf. v. Kansas City, 233 Mo. 162, 213, 214, 134 S. W. 1007.] [See also, Hislop v. Joplin, 250 Mo. 588, 599, 157 S. W. 625; Copeland v. St. Joseph, 126 Mo. 417, 29 S. W. 281; Parker v. Zeisler, 73 Mo. App. 537.]

Applying the elements of the test to the ordinance, in their respective order, it appears that Boschert's Addition, West Clayton, and Clayton Heights, are approximately a mile or more distant from the city of Clayton, and are separated from each other by opproximately a quarter of a mile. The lands intervening between these three pieces of platted territory are cultivated, as well as the area intervening between them and Clayton. None of them appear to be platted into lots. The testimony shows that in Boschert's Addition there are 7 or 8 houses on strips of ground having fifty foot

frontage; the other two pieces of platted territory are either subjected to general agricultural cultivation or general gardening. The total extent of the area thus platted is relatively so small that it should not be determinative of the vast area involved, nor is there any testimony whatsoever that either West Clayton or Clayton Heights are being held for sale as town lots, either independent of or in connection with the city of Clayton.

There is no suggestion in the record that any of the territory sought to be annexed is held to be brought on the market and sold as town property when it reaches a value corresponding with the views of the respective owners, on the contrary, the record is replete with evidence that the property is being held and is best adapted for country homes.

The testimony further shows that the area is not a densely settled community, and does not represent the actual growth of the city of Clayton beyond its legal boundary. On the contrary it appears that the population thereon is either purely agricultural or the outgrowth of the city of St. Louis.

Now, with reference to the need of the area for proper town purposes or police regulation. It may be said that the draws in the Davis tract are of advantage to the city of Clayton, and can well be utilized by said city in the development of its proposed sewer system; but that does not warrant it taking in treble the amount of territory involved in the Davis tract in which the draws are located.

And with reference to the police regulations, it sufficiently appears from the record that the character of inhabitants and their scattered abodes, as well as the absence of all places open to the public, does not appear to create the slightest demand for police regulation by a municipality; and the proof is clear that there is nothing inimicable to the peace or welfare of Clayton that requires its police supervision.

By far the major portion of the area involved appears from the evidence to have acquired its greater value, not on account of its proximity to the City of

Clayton, nor on account of its adaptability to town use, but on account of its adaptability for country homes. While the lands contiguous to Clayton are favorable for agricultural and horticultural purposes, and are now so used, nevertheless the greater value is because of its adaptability for country homes. Some value may attach to such lands east of the unopened Gay Avenue, and they may derive some special value from their adaptability for city uses in connection with the city of Clayton, but even so, it appears unreasonable to undertake to annex such a vast area when no present need appears therefor, and the visionary needs are too remote. While the vision of a greater Clayton is highly commendable, and the courts will not scrutinize too closely efforts of reasonable expansion; the fear that another city might seek to annex territory here involved, partakes more of the vision of the rival's growth than that of Clayton.

We apprehend that just in proportion as land sought to be annexed is adjacent to several centers of population, the legislative vision as to its annexation by any of the municipalities by which it is hedged about is shortened or restricted or the source of the flow of population becomes more important.

We are further of the opinion that in placing the boundary lines of the annexed area as far west as the Price road and as far south as the Clayton road, without taking those roads into the proposed corporate limits, is a matter of grave importance to the two and a half miles of territory fronting thereon. The importance of which inclusion or exclusion would increase as ones ability to visualize improved fifty foot lots fronting on said roads, where they touch the area involved. It dispenses with all municipal government over the roads, and is necessarily detrimental to the territory abutting thereon and in the vicinity thereof.

The testimony further discloses that the value of the territory in the area sought to be annexed will be greatly reduced by being included within the city of Clayton,

We are therefore of the opinion that it was unreasonable to subject all of the annexed territory to municipal control and burdens, and the presumption that the ordinance of extension was reasonable has been overcome by the testimony in the case.

Appellant objects to the form of the decree. The basis of the objection is that the decree *forever* enjoins the city of Clayton from extending its limits westwardly over the territory described in the ordinance. The portion of the decree pertinent to this point reads:

"Wherefore it is ordered, adjudged and decreed by the court that said defendant, its officers or any person or persons operating through or under them be and they are hereby *forever* enjoined from levying or assessing municipal taxes against the land or residents within the territory annexed by the terms of an ordinance extending the limits of the city of Clayton, St. Louis County, Missouri, westwardly, as enacted on the 12th day of September, 1916. It is further ordered, adjudged and decreed by the Court that said defendant be and it hereby is *forever* enjoined from exercising any municipal authority or function over the territory included within the corporate limits of the said city of Clayton by the terms of the aforesaid ordinance, or over any of the residents thereof."

The decree is susceptible to such construction.

The decree should be that the defendant, its officers and all persons operating through or under them be and they are hereby *forever* enjoined from putting in force and effect the ordinance extending the limits of the defendant city of Clayton, westwardly, as enacted on the 12th day of September, 1916; and from exercising under and by virtue of said ordinance, any municipal authority or function, including the levying and assessing of taxes, over the lands and upon the inhabitants of the territory sought to be annexed by said ordinance.

In view of the above and foregoing the Commissioner recommends that the decree be reversed and the cause remanded with directions to the trial court to enter a

decree in favor of plaintiff, and against defendant, in the form indicated above.

PER CURIAM:—The foregoing opinion of Barnes, C., is adopted as the opinion of the court. The decree of the trial court is accordingly reversed and the cause remanded with directions to enter a decree in conformity with said opinion. *Reynolds, P. J., Allen* and *Becker, JJ.*, concur.