# MISSOURI ZINC FIELDS CO. v. WEBB CITY.

Springfield Court of Appeals, July 8, 1922.

MUNICIPAL CORPORATIONS: Evidence Held Insufficient to Justify Annexation of Land Assessed for Municipal Taxes. In a suit to enjoin the assessment and levy of municipal taxes on lead and zinc mining land annexed to a city by ordinance, evidence *held to* show no reasonable ground to include such land within the city limits and no material advantage to plaintiff or the city other than the collection of taxes.

Appeal from the Circuit Court of Jasper County.—*Hon. J. D. Perkins,* Judge.

REVERSED AND REMANDED (*with directions*).

*A. C. Young* for appellant.

*Ray E. Watson* for respondent.

FARRINGTON, J.—This suit was begun by the plaintiff filing a bill in equity which sought to enjoin respondent from assessing and levying municipal taxes on three forty-acre tracts of land belonging to plaintiff which had by ordinance been included within the corporate limits of Webb City. It appears from the record that beginning with 1888, the city had from time to time passed ordinances extending the city limits of Webb City so as to include some portions of the land involved in this suit within the corporate limits of Webb City, and plaintiff had from time to time resisted payment of taxes. A number of suits in the circuit court had involved the reasonableness of the extension of the city to this territory and in each instance the ordinance taking such land into the incorporated city was declared unreasonable. After such action of the trial court the city would then pass a new ordinance taking in the same land and additional land. There is no showing that the procedures concerning elections, passing of ordinances, etc., were not at all times in accordance with the law relative to such matters and it is apparent that the decisions of the trial court from time to time were based solely on the ground that plaintiff's land was unfit for city purposes, and ordinances taking it within the city limits were held to be unreasonable.

Respondent makes claim that plaintiff should be estopped from maintaining this suit because of the fact that other territory was taken into the city limits at the same time the ordinances were passed taking in plaintiff's land, and that such other portions of the city as were taken in had become populated and treated as city property and in fact a part of Webb City.

There is nothing in the record so far as we can find which indicates that plaintiff ever did anything except resist payment of taxes and refuse to recognize that it was legally a part of the incorporated city.

The evidence in the record before us clearly shows and the three forty-acre tracts of land involved in this suit had never been used for any purpose other than mining for lead and zinc; that it was situated some distance to the southeast of the original corporation, and that a large portion of the land involved here is covered with chat piles and such disturbances of the surface of the ground as is made by mining it, and that the same is unfit and could not be used for any kind of city purposes. The evidence shows that no part of it has been platted or held for sale as town lots or that it ever acquired a value for town property, or that it furnishes an abode for a densely settled community or represents an actual growth of the town beyond its legal boundaries. As to settlement on this land, the evidence does show that at times when the land was being mined, those working the mines, termed in the record as squatters, would from time to time build portable houses in which they lived but that they did not own the ground. At the time of the trial the evidence clearly shows that practically all of these houses had been moved off and very few people were living on it. The evidence further shows that the ground involved was not made for the extension of streets, sewer, gas and water systems and shows that it could not, owing to the manner in which the surface of the ground has been torn up, supply a place for any considerable number of residents or be used for any business purposes, or in fact be adapted for prospective town uses.

There is no reasonable cause for this land to be a part of Webb City on account of police protection. Some mention is made that on two occasions the marshal of Webb .City had gone to this land for the purpose of killing dogs, and several arrests were made on the land

for gambling and some for reckless driving. This apparently under the record is all the police protection or any other protection that was given or benefits that could have accrued to the land from being a part of the corporation.

The record shows that in 1911 the city extended its limits taking in land to the north of Webb City (plaintiff's land lying on the south), one tract to the north known as the Guinn land. The method used by the city counsel in making the various extensions when former ordinances had been declared unreasonable, was to simply describe the whole of the city by ordinance and take in the plaintiff's land with other land and submit the ordinance to the voters. In other words, there was never an attempt, after the ordinance taking in plaintiff's land had been declared unreasonable, to extend again on that land alone, but other tracts of land in various parts of the city under the new ordinance would be taken in in an ordinance which would again include the plaintiff's land.

To our minds the evidence fails to show that there is any reasonable ground to include plaintiff's land within the city limits other than to collect city revenue, and further fails to show that any material advantage, other than the collection of taxes, would accrue to either the city or the plaintiff by including such land in the corporate limits of said city.

The evidence which we have recited fails to bring this case within the rule laid down for guidance in these matters as declared in Vestal v. Little Rock, 54 Ark. 321, 15 S. W. 891, 11 L. R. A. 778, which rule has been announced and followed by the Missouri decisions. [See Copeland v. City of St. Joseph, 126 Mo. 417, 29 S. W. 281; Parker v. Zeisler, 73 Mo. App. 537; State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S. W. 1007; Stoltman v. City of Clayton, 226 S. W. 315.]

For the reasons stated, we must hold that the judgment rendered by the trial court in this case in favor of

the defendant be reversed and the cause remanded with directions to enter a judgment restraining and enjoining the defendant from levying or assessing municipal taxes against said lands, or attempting to collect any taxes which have already been levied and assessed. *Cox, P. J.,* and *Bradley, J.,* concur.